COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOSEPH ZARZOSA,            §

           Appellant,       §

v.                        §

CURTIS FLYNN,           §

           Appellee.        §

                             §

No. 08-07-00142-CV

Appeal from the

327th District Court

of El Paso County, Texas

(TC#2006-4174)

## O P I N I O N

Appellant, Joseph Zarzosa, appeals the trial court's grant of summary judgment in favor of Appellee, Curtis Flynn. Because Zarzosa did not show that a genuine issue of material fact existed as to his claims, we affirm the judgment of the trial court.

## I. BACKGROUND

Zarzosa was charged with an undisclosed crime following a traffic stop. The reason given for the traffic stop was that Zarzosa was following the car in front of his too closely. Zarzosa's attorney in the criminal case, James Lucas, believed that the reason given for the stop was disingenuous, because, in Lucas's opinion, the state trooper who stopped Zarzosa could not have seen how close his automobile was to the car in front of it.

Lucas hired Flynn to testify as an expert at a hearing on Zarzosa's motion to suppress evidence collected after the traffic stop. The arrangement was confirmed by letter dated October 28, 2004, which stated, "You indicated that you would charge my client $85.00 per hour and would require $1,000.00 retainer, with any unused portion remitted back to the client. The suppression

hearing is scheduled for December 3, 2004." Lucas enclosed a check in the amount of $1,000 with the letter.

According to Zarzosa, Flynn failed to show up to the hearing, prompting Lucas to seek a continuance of the hearing. The motion was granted, and the suppression hearing was re-set to a later date. At the subsequent hearing, the court did not permit Flynn to testify as an expert witness. After the hearing, Flynn sent Lucas an invoice requesting additional payment in the amount of $494.94. Zarzosa refused to pay the invoice.

Zarzosa filed suit against Flynn on September 15, 2006, alleging numerous claims under the Texas Deceptive Trade Practices--Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41 *et seq.* (the "DTPA"), breach of express and implied warranties, breach of contract, fraud, and negligence. Flynn answered and subsequently filed a motion for summary judgment. Zarzosa did not file a response and did not object to Flynn's summary judgment evidence. The only summary judgment evidence was that which was attached to Flynn's motion. The trial court granted the motion and entered a final judgment that disposed of all of Zarzosa's claims.

On appeal, Zarzosa argues that the trial court erred, because genuine issues of material fact existed as to certain of his DTPA claims, as well as to his fraud and breach of contract claims. Zarzosa does not challenge the trial court's grant of summary judgment on his negligence claim, his DTPA claim alleging unconscionable conduct, and his breach of warranty claims.

2

## II. DISCUSSION

### A. Standard of Review

The standard of review for a traditional summary judgment asks whether the movant carried the burden of showing that there is no genuine issue of material fact, so that judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *De Santiago v. West Tex. Cmty. Supervision & Corr. Dep't*, 203 S.W.3d 387, 398 (Tex. App. --El Paso 2006, no pet.). Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's causes of action, *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002), or if he establishes all elements of an affirmative defense to each claim. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Once the movant has established a right to judgment as a matter of law, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

### B. Flynn's Summary Judgment Evidence

Flynn's summary judgment evidence consisted of his affidavit, along with Zarzosa's petition, Zarzosa's interrogatory responses, and a letter from Lucas reciting the agreement with Flynn. In his affidavit, Flynn stated that he specialized in providing expert testimony in traffic accident reconstruction and special investigations. He stated that, in late October 2004, he was approached by Lucas about testifying as an expert at Zarzosa's suppression hearing. Flynn informed Lucas that

3

he would be able to testify at the December 3 hearing and would charge $85 per hour, with an up-front retainer fee of $1,000. Flynn stated that he never guaranteed Lucas that the total amount of charges would not exceed $1,000, and that all discussions of expected costs were estimates. On November 26, 2004, he met with Lucas to discuss his initial findings and anticipated testimony and informed Lucas on that day that he would be traveling out-of-town to provide expert testimony in a trial in Andrews, Texas, but that he most likely would be back for the December 3 suppression hearing.

Flynn stated that, by noon on December 2, he was still in trial at the proceeding in Andrews. Flynn contacted Lidia Flynn, who worked in his office, and instructed her to inform Lucas of the potential conflict. Lidia Flynn called Flynn back minutes later and told him that she had spoken with Dolores Zarzosa, Lucas's assistant, and informed her that Flynn probably would not make it to the suppression hearing, but would let Lucas know of any changes. Later that afternoon, Flynn was allowed to testify out of order and was released from the proceeding in Andrews. Flynn stated that he called Lucas's office on the afternoon of December 2, during business hours, but only was able to leave a voice mail for Lucas that he would be available for Zarzosa's suppression hearing, which was set for 1 p.m. the next day. Flynn stated that he called Lucas's office the next morning and spoke to Dolores Zarzosa, who confirmed that his voice mail message had been received. She told him, however, that he did not need to attend, because the hearing was going to be reset.

Flynn was informed of a new hearing date at approximately 8 to 8:30 a.m. on April 25, 2005, which Flynn attended. According to Flynn, in addition to having him testify, Lucas asked Flynn to assist him throughout the hearing and to attend the testimony of police officers who were scheduled to testify before Flynn. Flynn stated that the hearing continued until a lunch break and then resumed

4

into the afternoon. When Flynn was called to testify, the prosecution objected to his testimony, and the court sustained the objection. Flynn stated that Lucas asked to file a bill of exception, and Flynn testified on the record for the purposes of the bill. The hearing was concluded in the late afternoon of April 25.

### C. Zarzosa's DTPA Claims

In Issues One, Three, Four, and Five, Zarzosa challenges the summary judgment on certain DTPA claims. Most of Zarzosa's arguments on these issues are based on his contention that summary judgment was precluded, because Flynn attached Zarzosa's interrogatory responses to his motion, thereby creating a fact issue. "Answers to interrogatories may be used only against the responding party." TEX. R. CIV. P. 197.3. A party may not rely on its own interrogatory responses to raise a fact issue in order to defeat summary judgment, even if the other party puts them into evidence. *Garcia v. National Eligibility Express, Inc.*, 4 S.W.3d 887, 891 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (interrogatory answers are incompetent summary judgment evidence when a party relies on his own interrogatory answers to show there is a fact issue); *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 94-95 (Tex. App.--Dallas 1996, writ denied) (plaintiff could not rely on her interrogatory answers, which were included in the defendant's motion for summary judgment, to defeat the defendant's motion); *cf. Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998) (noting in per curiam opinion that court of appeals erroneously used interrogatory responses in favor of the answering party by relying on them to defeat summary judgment).[1]

---

[1] Zarzosa argued at length in his brief that summary judgment on his breach of contract claims and his DTPA claims was improper, because Flynn's interrogatory answers, which were attached to Flynn's motion for summary judgment, created a genuine issue of material fact. At oral argument, however, counsel for Zarzosa conceded without solicitation that Texas law did not support this argument.

5

Zarzosa asserted numerous claims under the DTPA. He alleged that Flynn made false representations concerning his ability to testify at the December 3 hearing. Zarzosa sought recovery therefor under sections 17.46(b)(4), (5), and (7), TEX. BUS. & COM. CODE ANN. §§ 17.46(b)(4), (5), (7). Zarzosa also alleged that Flynn violated subsection (b)(24), *id.* at § 17.46(b)(24), by failing to disclose that he could not attend the December 3 hearing.

Flynn's summary judgment evidence established that he represented to Lucas that he could attend the hearing. Flynn stated in his affidavit that he informed Lucas a week before the hearing that he would be traveling out-of-town, but would be able to attend the hearing. The evidence also showed that, despite a potential conflict, Flynn was able to return to El Paso to attend the hearing, but that he was informed by Lucas's assistant that the hearing was being reset and that he did not need to attend. Accordingly, the evidence established that Flynn would have been able to testify at the December 3 hearing and that he did not misrepresent his ability to do so.

Zarzosa alleged that Flynn violated subsection (b)(12), *id.* at § 17.46(b)(12), by representing that he would be willing to perform for $1,000. Zarzosa also alleged that Flynn's failure to disclose to Lucas that the fee might exceed the retainer of $1,000 and his failure to disclose that his fee was not capped at $1,000 also violated subsection (b)(24), *id.* at § 17.46(b)(24). The uncontroverted evidence showed that the parties' arrangement was that Flynn would charge $85 an hour, with an up-front retainer fee of $1,000. Flynn stated in his affidavit that he never guaranteed that the total amount would not exceed $1,000. Moreover, Lucas's own letter concerning the arrangement does not in any way indicate that charges for Flynn's services were limited to the $1,000 retainer, but instead confirms that Flynn indicated that he would charge "$85.00 per hour and would require $1,000.00 retainer, with any unused portion remitted back to the client." As such, the summary

judgment evidence established that Flynn did not fail to disclose material information concerning the fee to be charged or falsely represent the fee arrangement.

Zarzosa further alleged that Flynn made false representations concerning the services he performed, by submitting an invoice for services he never performed, in violation of subsection (b)(5), *id.* at § 17.46(b)(5). Zarzosa did not indicate in his petition which services were not performed, and he did not provide any summary judgment evidence concerning this allegation. Flynn's uncontroverted summary judgment evidence was that, after reviewing the information that Lucas provided him, the two discussed the expectation that Flynn's testimony was unlikely to exceed one and one-half hours. Flynn stated that he and Lucas also discussed the fact that he would have to spend additional time performing the calculations which formed the basis of his testimony and preparing his testimony.

According to Flynn, he prepared for and attended the April 25 hearing. Flynn stated in his affidavit that he arrived at the hearing at approximately 8 to 8:30 a.m. Flynn stated that contrary to the original agreement, Lucas asked him to assist him throughout the entire hearing and attend the entire testimony of the police officer witnesses scheduled to testify before him. Flynn stated further that he remained at the hearing until late afternoon, thereby exceeding the amount of time initially thought necessary to testify. Accordingly, the summary judgment was proper on this claim, because the evidence established that Flynn performed as required by the agreement, but that Lucas requested Flynn to provide additional assistance that resulted in a final invoice that was more than initially anticipated. For the foregoing reasons, we overrule Issues One, Three, Four, and Five.

### D. Zarzosa's Fraud and Fraudulent Inducement Claims

In Issue Two, Zarzosa claims that the trial court erred in granting summary judgment in favor

of Flynn on Zarzosa's fraud and fraudulent inducement claims, because Flynn did not move for summary judgment on the claim.

Rule 166a(c) of the Texas Rules of Civil Procedure requires that "[t]he motion for summary judgment shall state the specific grounds therefor." TEX. R. CIV. P. 166a(c). Moreover, a summary judgment motion must stand and fall on its own merits, and the nonmovant's failure to except or respond cannot supply by default the ground for summary judgment or the summary judgment proof necessary to establish the movant's right to such judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). Grounds are sufficiently specific, if they provide the nonmovant with fair notice of the basis upon which judgment is sought. *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 633 (Tex. App.--Fort Worth 2003, pet. denied).

The motion for summary judgment recites in the introductory paragraph that Flynn requests summary judgment "against all claims brought by Plaintiff Joseph Zarzosa . . . ." In the following section, Flynn states that "[t]his motion embraces all causes of action against Defendant." The motion contains separate sections addressing Zarzosa's negligence, breach of contract, and DTPA claims, but does not contain a section concerning Zarzosa's fraud claim and does not mention the fraud claim.

In support of his fraud claim, Zarzosa pleaded that Flynn "made false representations and promises and engaged in a pattern of subsequent conduct, all of which was calculated to perpetrate a fraud against Plaintiff Zarzosa. If Defendant Flynn had not engaged in such conduct, Zarzosa would never have hired him as an expert." Zarzosa referenced the facts section of his petition, but did not indicate in any detail the nature of the alleged promises and subsequent conduct. The facts section of the petition does not indicate which statements by Flynn constituted misrepresentations.

8

In the section of his petition concerning his DTPA claims, Zarzosa alleged Flynn misrepresented that he was able to attend the December 3 hearing and provide expert testimony, misrepresented that he would perform under the agreement for no more than $1,000, and misrepresented that he performed work that he did not actually perform. In addition, Zarzosa alleged that Flynn failed to disclose that his total bill might exceed $1,000. A fair reading of Zarzosa's petition shows that at least one, and perhaps some or all, of the alleged misrepresentations that formed the basis for Zarzosa's DTPA claims also formed the basis for his fraud and fraudulent inducement claims, because there were no other allegations of misrepresentation in the petition.

Flynn addressed each of the foregoing allegations in the DTPA section of his motion and in his summary judgment evidence. It has been held that summary judgment may be affirmed on a cause of action not specifically addressed in a summary judgment motion, if the elements urged in the motion and established by summary judgment proof dispose of one or more of the elements of the unmentioned cause. *See Pinnacle Data Servs., Inc. v. Gillen*, 104 S.W.3d 188, 197 (Tex. App.--Texarkana 2003, no pet.) (affirming summary judgment as to unaddressed breach of contract claim, because recovery was precluded by terms of contract and trial court properly granted summary judgment on declaratory judgment claim concerning same contractual provision); *see also Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 755 (Tex. App.--San Antonio 1998, no pet.) (affirming summary judgment as to unaddressed claims for restitution and breach of contract where the summary judgment evidence established as a matter of law that the appellants failed to satisfy the conditions of the agreement).

In such instances, reversal would be meaningless, because the questioned recovery is precluded as a matter of law. *Pinnacle Data*, 104 S.W.3d at 197; *Vogel*, 966 S.W.2d at 755. In this

9

case, Flynn presented uncontradicted summary judgment evidence on each of the misrepresentations alleged by Zarzosa and obtained summary judgment thereon. These alleged misrepresentations were not peripheral allegations, but were the sole basis for Zarzosa's DTPA claims. Since the misrepresentation element of Zarzosa's fraud and fraudulent inducement claims has been disposed of, reversal of the summary judgment for consideration of those claims would be meaningless in this case. For this reason, we overrule this issue.

### E. Zarzosa's Breach of Contract Claim

In Issue Six, Zarzosa contends that the trial court erred in granting summary judgment on his breach of contract claim. Zarzosa's main argument on this issue is based on his contention that summary judgment was precluded, because Flynn attached Zarzosa's interrogatory responses to his motion. As demonstrated above, this is not sufficient to create a fact issue in favor of Zarzosa. *See Yates*, 988 S.W.2d at 731; *Garcia*, 4 S.W.3d at 891; *Hanssen*, 938 S.W.2d at 94-95.

Zarzosa alleged that Flynn committed breach of contract by billing over $1,000, failing to appear at the December 3 hearing, failing to notify Lucas that he would not be present at the December 3 hearing, charging sales tax and other expenses, billing for work that was not done, and overbilling. Flynn stated in his affidavit that he informed Lucas that he would be able to testify at the hearing and would charge $85 an hour, with an up-front retainer fee of $1,000. Flynn stated that he never guaranteed that the total amount would not exceed $1,000. Flynn also attached a letter dated October 28, 2004, from Lucas in which Lucas described the agreements as follows:

> This letter is in regards to our conversation about retaining you as a traffic expert to testify as an expert in the suppression hearing concerning Joseph Zarzosa. You indicated that you would charge my client $85.00 per hour and would require $1,000.00 retainer, with any unused portion remitted back to the client.

Accordingly, the uncontroverted summary judgment evidence established that the agreement did not include a promise that Flynn would bill no more than $1,000. Where a summary judgment movant's evidence is not contradicted, it will be taken as true. *Casey v. Amarillo Hosp. Dist.*, 947 S.W.2d 301, 304 (Tex. App.--Amarillo 1997, writ denied); *see also Bass v. Bass*, 790 S.W.2d 113, 117-18 (Tex. App.--Fort Worth 1990, no writ) (movant's uncontroverted summary judgment evidence would be taken as true on appeal).

As for the allegations that Flynn failed to attend the December 3 hearing or inform Lucas of nonattendance, Flynn stated in his affidavit that he agreed to attend the December 3 hearing, but later came to believe that he would not be able to make the hearing due to a potential conflict with regard to the Andrews proceeding. Flynn stated that a person at his office contacted Lucas's office on December 2 concerning the possibility that he would be unavailable for the December 3 hearing. Flynn further stated that he was subsequently released from the Andrews proceeding and informed Lucas by voice message that he would be able to attend. Finally, Flynn stated that he contacted Lucas's office on the morning of December 3 and was told that they had received his voice message stating that he would be available, after all, but that the hearing was being reset.

With regard to the remaining allegations, Flynn's summary judgment evidence established that he prepared for the April 25 hearing and that, at Lucas's request, he remained and assisted Lucas for the duration of the hearing, which lasted most of the day. As such, the uncontroverted evidence established that Flynn performed pursuant to the agreement with Lucas. Moreover, Zarzosa admitted in his petition that he refused to pay the $494.94 invoice from Flynn, that was in addition to the $1,000 retainer. Finally, Flynn attended the April 25 hearing and testified, to the extent permitted by the court. We overrule Issue Six.

11

## III.  CONCLUSION

We affirm the judgment of the trial court.


KENNETH R. CARR, Justice

September 25, 2008

Before McClure, and Carr, JJ., and Ables, Judge
Ables, Judge, sitting by assignment