# IN THE SUPREME COURT OF TEXAS

══════════════

No. 09-0901

══════════════

TEXAS RICE LAND PARTNERS, LTD. AND MIKE LATTA, PETITIONERS,

v.

DENBURY GREEN PIPELINE-TEXAS, LLC, RESPONDENT

═══════════════════════════════════════════════════════════

ON MOTION FOR REHEARING

═══════════════════════════════════════════════════════════

JUSTICE WAINWRIGHT, joined by JUSTICE JOHNSON, concurring.

I join the Court's opinion but write separately to address the scope of the Court's holding.

The Court holds that to be a "common carrier" carbon dioxide pipeline, and endowed by the Natural Resources Code with the power to exercise eminent domain for public use, it must do more than check a box on a government form. ___ S.W.3d ___. I agree. The right of private property is a fundamental right expressly protected in the constitution. *Severance v. Patterson*, ___ S.W.3d ___ (Tex. 2012) (citing *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977)). The Court also holds that for a carbon dioxide pipeline owner to be a common carrier engaged in transporting the resource to or for the public, the pipeline's only users must be more than a "corporate parent or affiliate." ___ S.W.3d ___. Denbury Green Pipeline-Texas, LLC (Denbury Green), the pipeline owner and common carrier applicant, filed a second motion for rehearing solely on the issue of the breadth of the Court's use of the term "affiliate" under sections 111.002(6) and 111.019 of the Texas Natural Resources Code. The Court denies Denbury's second motion for rehearing in this cause.

I concur that some affiliate relationships will not suffice to make the transport of gas for the benefit of the public, but I also believe that in providing guidance we should take care not to issue pronouncements exceeding the scope of the facts in dispute. *See, e.g., Upjohn Co. v. U.S.*, 449 U.S. 383, 386 (1981) ("[W]e sit to decide concrete cases and not abstract propositions of law" and "decline to lay down a broad rule or series of rules to govern all conceivable future questions."). I, therefore, respectfully disagree and would address the concerns raised on rehearing by Denbury

Denbury takes issue with footnote 23 of the opinion, arguing that we should not have included language stating blanketly that transporting gas for undefined affiliates is not a public use for purposes of the common-carrier test. Although I agree with the Court that evidence of public use and the relatedness of affiliated entities may be necessary to ensure that common carrier carbon dioxide pipelines are, in fact, used to transport gas for the public rather than to benefit close-knit families of companies under common control, I would refine the Court's discussion of "affiliate."

\* \* \*

The Legislature delegated to a common carrier the power of eminent domain under specified circumstances. TEX. NAT. RES. CODE § 111.019(a) ("Common carriers have the right and power of eminent domain."); *see also* Tex. Const. art. 1, § 17(a)(1)(B), (c) (providing that the Legislature may grant "an entity" the power of eminent domain for public use.). A common carrier of carbon dioxide, the resource at issue in this case, is a person who "owns, operates, or manages, wholly or partially, pipelines for the transportation of carbon dioxide or hydrogen in whatever form to or for

2

the public for hire . . . ." *Id*. § 111.002(6).[1] However, as the Court's opinion indicates, section 111.002(6) indicates that a carbon dioxide pipeline owner is not a common carrier if the pipeline's only end user is a corporate parent or an entity related to it in some degree. __ S.W.3d __. This implies the converse—if a pipeline transports carbon dioxide for persons other than a corporate parent or affiliate, it may serve a public use.

As the Court explains, Denbury Green, the pipeline owner and applicant, is a wholly owned subsidiary of a wholly owned subsidiary of Denbury Resources, Inc. (Denbury). __ S.W.3d __. Denbury's ownership and control of the pipeline owner clearly makes Denbury an affiliate and unhelpful in satisfying the public-use requirement necessary for common-carrier status. Nevertheless, in discussing the test for common-carrier status, the Court observes "the pipeline does not serve a public use if it only transports gas for a corporate parent or affiliate." *Id.* n.23. The Court includes no limitations on the scope of an affiliate, which could expand dramatically the number of end users that would exclude a pipeline from common-carrier status.

"Affiliate" is not a term used or defined in Chapter 111 of the Natural Resources Code, the chapter governing this case. *See* TEX. NAT. RES. CODE §§ 111.001–.406. "Affiliate" is commonly understood to mean "a subsidiary, parent, or sibling corporation" or a corporation "related to another corporation by shareholdings or other means of control." BLACK'S LAW DICTIONARY 67 (9th ed. 2009). Given the undefined ownership interest and extent of control implicated by the definition of "affiliate," the Court's use of this broad term could result in a conclusion that an entity owning just

---

[1] The person must also file a written acceptance agreeing to be subject to the duties and obligations conferred or imposed by the chapter. *Id*.

one share of the pipeline owner's stock is an "affiliate" and the pipeline owner is therefore not a common carrier, without any evidence of control.[2]  We need not go that far under the facts of this case.  Because "affiliate" is not defined in the statute and the common meaning of the word is very broad, I agree that the opinion could be read more broadly than intended by the Legislature or reason dictates.

* * *

There is no discussion in Chapter 111 of how related persons and business entities must be to trigger exclusion on public-use. The Legislature defined the term "affiliate" in other statutory provisions addressing the regulation of minerals by the Texas Railroad Commission, and they provide some insights.

While not governing carbon dioxide pipelines, Chapter 111's definition of "common purchaser" refers to corporate affiliation, including within its reach "every person that purchases crude oil or petroleum produced within the limits of this state and that is *affiliated through stock ownership, common control, contract, or in any other manner* with a common carrier by pipeline or is itself a common carrier."  TEX. NAT. RES. CODE § 111.081(a)(1) (emphasis added).

"Common purchaser" is very broadly defined and suggests that, among other considerations, nominal stock ownership would confer affiliate status.  However, regulations of the Commission's Oil and Gas Division suggest that some degree of operational control or threshold percentage ownership interest is required for affiliate status.  One example is the Commission's organization-

_____

[2] "Corporate parent" is also undefined and raises similar questions.

4

report rule, requiring persons and business organizations to submit directory and ownership information for any person or organization "performing operations within the jurisdiction of the Commission." 16 TEX. ADMIN. CODE § 3.1(a)(1), (4). In discussing notices of bankruptcy for organizations required to file organization reports, the Commission requires thirty-days notice by "the organization or the affiliate" filing for bankruptcy. *Id*. § 3.1(f). "Affiliate" means, for the purpose of this section, "an organization that is effectively controlled by another." *Id*.

Focusing on both control and a percentage ratio of ownership, the rule on ratable production of natural gas defines "affiliate" as "[a] person or entity that owns, is owned by, or is under common ownership with another person or entity to the extent of 50% or more or that otherwise controls or is controlled by another person or entity." *Id*. § 3.34(a)(1). The rule for forms, applications, and filing requirements does not refer directly to an "affiliate," but does proscribe organization reports and applications for permits by certain owners holding "a position of ownership or control" in an organization that previously violated Commission requirements. *Id*. § 3.80(c)(2). Defining "position of ownership or control" as an officer, general partner, sole proprietor, owner of more than twenty-five percent of the organization, or designated trustee, the regulation repeats the dual characteristics of operational control and threshold ownership interest. *See id*. § 3.80(b)(5). The rule for fees and financial-security requirements similarly defines officers and owners as persons "owning or controlling an organization including officers, directors, general partners, sole proprietors, owners of more than 25% ownership interest, any trustee of an organization, and any person determined by a final judgment or final administrative order to have exercised control over the organization." *Id*. § 3.78(a)(8).

5

The rules of the Gas Services Division also define "affiliate" both in terms of a percentage ratio of ownership or operational control. The procedural rule for the Gas Services Division references the definition of "affiliate" at section 101.003 of the Texas Utilities Code. *Id*. § 7.115(1). Section 101.003 defines "affiliate" as a person owning, directly or indirectly, at least five percent of the voting securities of the gas utility, a corporation with at least five percent of its voting securities owned by a gas utility, an officer or director of a corporation in a chain of successive ownership of at least five percent of the voting securities of a gas utility, or a person determined to be an affiliate under section 101.004. TEX. UTIL. CODE § 101.003(2). Section 101.004 focuses on operational control, allowing the Commission to deem a person an affiliate if the Commission finds, after notice and hearing, that the person exercises "substantial influence or control over the policies of a gas utility," is under the "substantial influence or control" of a gas utility, is under "common control with a gas utility," or "actually exercises substantial influence over the policies and actions of a gas utility in conjunction with" a business partner or blood relation. *Id*. § 101.004(a)(1)–(4).

\* \* \*

Chapter 111, as well as gas-services statutes and the Commission's regulations, generally predicate "affiliate" status either on some degree of operational control or some defined percentage of ownership interest in the other entity, or both. The scope of the term as used in the Court's opinion is broader than all the referenced affiliate definitions in the natural resources statutes and regulations. We can protect property rights under the Constitution without undermining the recognition in Texas law of the separateness of corporate entities. And we should not leave the

6

breadth of the disqualifying affiliate relationships unbounded when it is so important to both property owners and the energy industry.[3]

_____
Dale Wainwright
Justice

**OPINION DELIVERED:** August 17, 2012

---

[3] The Court received briefing from fourteen amici in this case, including property owners and oil and gas companies, and several have expressed concern over confusion, lack of predictability and the risk of variant judicial opinions that could arise from some of the language of the opinion. This is a matter the Legislature could address.