**Opinion issued July 24, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00404-CV

———————————

**BONNIE JOHNSON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JALEN JOHNSON, AND ANTHONY JOHNSON,** Appellants

**V.**

**VYJU RAM, M.D. AND MICHAEL J. BISHOP, M.D., P.A. D/B/A GRAND PARKWAY PEDIATRICS,** Appellees

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-16061**

---

## MEMORANDUM OPINION

Appellants, Bonnie Johnson, individually and as representative of the estate

of Jalen Johnson, and Anthony Johnson, challenge the trial court's rendition of

summary judgment in favor of appellees, Vyju Ram, M.D. ("Ram"), and Michael

J. Bishop, M.D., P.A., doing business as Grand Parkway Pediatrics ("GPP"), on their health care liability claims against Ram and GPP. In three issues, the Johnsons contend that the trial court's judgment is not final and it erred in dismissing certain of their claims against GPP and granting Ram and GPP summary judgment on their remaining claims.

We affirm.

## Background

In their second amended petition, the Johnsons allege that on January 29, 2007, Mrs. Johnson took their nineteen-month-old son, Jalen, to Dr. Ram at GPP for treatment because he had, since the prior day, been running a fever of 104.8 degrees, rubbing his neck, tugging at his ears, and shivering. During Ram's examination, Jalen had a temperature of 100.5 degrees, "full range of motion" in his neck, and a red throat. After testing positive for strep, Ram diagnosed Jalen with strep throat and sent him home with an antibiotic prescription. Mrs. Johnson was instructed to increase Jalen's fluids and monitor his fever.

The next day, Mrs. Johnson informed Dr. Ram's office that Jalen had not improved. Rather, he had "persistent fever, reduced oral intake, decreased urine output, slept the whole day, and started to become lethargic." Mrs. Johnson was then instructed to wait, give the medication time to work, and call back the next day if no improvement was noted.

2

On January 31, 2007, Mrs. Johnson returned to Dr. Ram's office with Jalen, reporting that he was showing weakness and stiffness, and he suffered from intermittent shaking. Ram noted that Jalen had a fever of 100.4 degrees and his neck was "stiff," and she opined that he possibly had meningitis. She administered an antibiotic and instructed Mrs. Johnson to take Jalen to the emergency room at Texas Children's Hospital ("TCH").

At TCH, Jalen demonstrated "poor tone" in his extremities and an "altered mental status." He was diagnosed with bacterial meningitis and admitted into pediatric intensive care. By February 3, 2007, he had deteriorated neurologically, was having seizures, and was no longer breathing on his own. He died the next day.

The Johnsons bring claims against Dr. Ram and GPP for negligence and gross negligence, alleging that "[a]s a direct result of the delayed diagnos[i]s and treatment by Dr. Ram, the meningitis had progressed to the point that the physicians at TCH were unable to prevent Jalen's death." The Johnsons allege that Ram is directly liable for her acts and omissions, and vicariously liable for the acts and omissions of her staff. They further allege that GPP is vicariously liable for the acts and omissions of Ram and its staff. Ram and GPP answered, each asserting a general denial.

The Johnsons served Dr. Ram and GPP with a medical expert report[1] authored by Joseph D. Tobias, M.D. In his report, as amended, Tobias notes that he is board certified in pediatrics, anesthesiology, pain management, and pediatric critical care management. He has been an attending physician in pediatric intensive care units and has served as chief of pediatric critical care in several hospitals. Tobias has been an associate professor of pediatrics at several universities, has authored numerous works in pediatric medical books and professional publications, and speaks at seminars and medical schools.

Dr. Tobias explains that, based on his education, training, and experience, he is familiar with the standard of care for physicians, including pediatricians, applicable to the evaluation and treatment of children such as Jalen. In his practice of pediatric critical care medicine, he has evaluated several infants with the same or similar condition that Jalen presented in January 2007. And he is familiar with infectious disease processes in children, including bacteremia and meningitis.

In his report, Dr. Tobias notes that he reviewed Jalen's medical records from Dr. Ram, GPP, and TCH. He explains that the applicable standard of care for "any pediatrician, including [Ram], [in] evaluating and caring for a child over 3 months but less than 3 years of age with a fever" is to obtain a focused history; perform a thorough physical examination; not rely on a strep test; prescribe antibiotics; utilize

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2013).

appropriate fever protocols; adequately and specifically communicate with the child's parents regarding the need to bring the child to a hospital, if the condition worsens; and educate the parents on the specific symptoms that indicate worsening.

Based on his education, training, and experience, Dr. Tobias opines that Dr. Ram breached the standard of care by:

1. Failing to perform an adequate evaluation of Jalen Johnson, a 19 month old child with fever on January 29, 2007;

2. [Misdiagnosing] a 19 month old child with strep throat on January 29, 2007 knowing that strep throat in children Jalen's age is extremely rare and that he did not have on physical exam the signs and symptoms of strep throat including: fever > 101 [degrees], bright red throat, difficulty swallowing, drooling in [a] young child, swollen enlarged tonsils with white or yellow exudate/patches noted on the tonsils, swollen lymph nodes in the neck or skin rash;

3. Failing to provide and document in the chart on January 29, 2007 that appropriate follow up instructions were given and thoroughly explained to Mrs. Johnson;

4. Failing to instruct Mrs. Johnson on January 29, 2007 to return to the office or take Jalen to an emergency room if his condition worsened, as exhibited by changes in mental status, increased sleepiness, listlessness and lack of energy, decreased oral intake and/or decreased urine output;

5. Fail[ing] to properly educate and stress to Mrs. Johnson on January 29, 2007 the potential significance of worsening condition including changes in mental status including increased sleepiness, listlessness and lack of energy, decreased oral intake and/or decreased urine output; and

6. Prescribing an inappropriate medication on January 29, 2007.

5

As to causation, Dr. Tobias opines that "Dr. Ram's breaches of the standards of care . . . were a proximate cause of the delay in Jalen Johnson's diagnoses, treatment, severe neurological injuries, hemodynamic instability and ultimate death on February 4, 2007." He further opines that had Jalen been properly assessed and Mrs. Johnson properly informed, Jalen would have been taken to a hospital on January 30, 2007, where his condition "would have been recognized" and "appropriate antibiotic therapy would have been started before the progression of the disease process from occult bacteremia to meningitis."

Dr. Ram did not challenge the sufficiency of Dr. Tobias's amended expert report. GPP moved to dismiss the Johnsons' claims against it, arguing that the report is insufficient because it does not mention GPP or the conduct of its staff. On October 26, 2009, the trial court granted dismissal as to any direct liability of GPP, concluding that "nothing was alleged" against GPP. And it granted dismissal as to any vicarious liability of GPP regarding any staff other than Ram, concluding that "the standard of care and the negligence of a staff member was not sufficiently identified, nor was causation established." It denied GPP dismissal as to its vicarious liability for the conduct of Ram.

Three years later, Dr. Ram and GPP filed a no-evidence summary-judgment motion "on all claims," asserting that after engaging in discovery for three years, the Johnsons had produced no evidence of the pertinent standard of care, breach, or

causation to support their negligence claims. Ram and GPP asserted that after the trial court had granted their motion to compel the depositions of the Johnsons' retained experts and ordered them to "produce for oral depositions all [their] retained experts within 21 days," and the parties further extended that deadline by agreement, the Johnsons had produced only one expert, Fabio Fernandez, M.D., a pediatric neurologist who treated Jalen at TCH. Ram and GPP attached to their summary-judgment motion an excerpt of Fernandez's deposition in which he testified that he is "not a primary-care pediatrician," he refused to offer any testimony regarding "what . . . Dr. Ram did in her care and treatment" of the child or what she "should or should not do in the care and treatment of a patient," and he refused to "talk about or give testimony related to any of the nursing care that Jalen received when he was a patient at [GPP]." Ram and GPP argued that they were entitled to summary judgment because the Johnsons' sole expert had offered no opinions as to liability or causation.

To their summary-judgment response, the Johnsons attached as their evidence Dr. Ram's and GPP's original answers and the trial court's dismissal order. And they quoted in the body of their response Dr. Tobias's expert report.

After a hearing, the trial court granted Dr. Ram and GPP summary judgment, ordering that the Johnsons take nothing on their claims.

## Jurisdiction

In their third issue, the Johnsons argue that this Court lacks jurisdiction to review the trial court's summary judgment because it "did not dispose of all claims for direct and vicarious liability against all parties, and, therefore, [it is] not final." The Johnsons also assert that the judgment is "non-specific as to which parties and claims it purportedly addresses."

Generally, we have jurisdiction to review final and definite judgments. *See Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985). A judgment is final "if it disposes of all pending parties and claims in the record." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). "A judgment that actually disposes of every remaining issue in a case is not interlocutory merely because it recites that it is partial or refers to only some of the parties or claims." *Id.* at 200.

In their original petition, the Johnsons asserted claims against Dr. Ram and GPP for negligence and gross negligence. They later amended their petition, adding claims against Jean Bryant, M.D., Michael J. Bishop, M.D., and Michael J. Bishop, M.D., P.A. In their second amended petition, however, the Johnsons list only Ram and GPP as defendants, and they non-suited Bryant, Bishop, and Michael J. Bishop, M.D., P.A. They assert claims against Ram for direct liability; assert that Ram is vicariously liable for the conduct of her staff; and assert that GPP is vicariously liable for the actions of Ram and its staff. After the trial court's

8

October 26, 2009 dismissal order, the Johnsons' only remaining claims are for direct liability as to the acts and omissions of Ram, vicarious liability as to Ram for the acts and omissions of her staff, and vicarious liability as to GPP for the acts and omissions of Ram.

As discussed below, we conclude that the trial court's summary-judgment order disposed of the remaining claims. Accordingly, we hold that the trial court's summary judgment constitutes a final judgment. *See Lehmann*, 39 S.W.3d at 195; *Noorian v. McCandless*, 37 S.W.3d 170, 173 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("[A] final judgment may consist of several orders that cumulatively dispose of all parties and issues."); *see also Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex. 2011) (stating trial court's prior interlocutory orders merge into final judgment).

We overrule the Johnsons' third issue.

### Summary Judgment

In their second issue, the Johnsons argue that the trial court erred in granting Dr. Ram and GPP summary judgment because "Michael J. Bishop, M.D., P.A. d/b/a Grand Parkway Pediatrics" is not a named defendant in this suit. They further argue that the case should be remanded "as to the vicarious liability against Dr. Ram" because the summary-judgment motion and order failed to address this claim.

9

After an adequate time for discovery, the party without the burden of proof may move for summary judgment, with or without presenting evidence, on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The movant must specifically state the element as to which there is no evidence. TEX. R. CIV. P. 166a(i). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged element. *See Johnson*, 73 S.W.3d at 207.

To defeat a no-evidence motion, "the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt. We will sustain a no evidence point if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the non-movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla exists when the evidence "'rises to a level that would enable reasonable and fair-

minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Conversely, "'[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Id*. (quoting *Kindred v. Con/Chem, Inc*., 650 S.W.2d 61, 63 (Tex. 1983)).

Here, Dr. Ram and GPP filed a "No-Evidence Motion for Summary Judgment" as to "all claims" against them. In their motion, they specifically addressed the direct liability of Ram and the vicarious liability of GPP for the acts and omissions of Ram. Ram and GPP asserted that although the parties had engaged in discovery for three years, the Johnsons had not produced any evidence of the standard of care, "a breach of that standard by Dr. Ram," or causation. They asserted that after the trial court had granted their motion to compel the depositions of the Johnsons' retained experts and had ordered the Johnsons to "produce for oral depositions all [their] retained experts within 21 days," and the parties had further extended that deadline, the Johnsons produced only one expert, Dr. Fernandez, a pediatric neurologist who treated Jalen at TCH. Ram and GPP attached to their summary-judgment motion an excerpt of Fernandez's deposition in which he testified that he was not a primary-care pediatrician, he refused to offer any testimony regarding "what . . . Dr. Ram did in her care and treatment" of the child

11

or what she "should or should not do in the care and treatment of a patient," and he refused to "talk about or give testimony related to any of the nursing care that Jalen received when he was a patient at [GPP]." Ram and GPP asserted that they were entitled to summary judgment because the Johnsons' sole expert, Fernandez, offered no opinion as to liability or causation as to Ram or GPP.

Because Dr. Ram and GPP specifically asserted the elements as to which there is no evidence to support a claim against them, the burden then shifted to the Johnsons to produce evidence to raise a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i); *Johnson*, 73 S.W.3d at 207.

To their response, the Johnsons attached Dr. Ram's and GPP's original answers. Answers do not constitute summary-judgment evidence and cannot raise a fact issue precluding summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Giraldo v. Pavia*, No. 14-10-00780-CV, 2011 WL 4840712, at *4 (Tex. App.—Houston [14th Dist.] Oct. 13, 2011, no pet.) (mem. op.). The Johnsons also incorporated Dr. Tobias's expert report. However, such a report merely enables a claimant to cross over a threshold to proceed with a health care liability claim. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). It does not constitute evidence for recovery. *Id.* Such an expert report is "not admissible in evidence; may not be used in a deposition, trial, or other proceeding; and may not even be referred to by any party during the course of the action for

12

any purpose." *Hernandez v. Ebrom*, 289 S.W.3d 316, 328 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(k) (Vernon Supp. 2013). Thus, the Johnsons did not meet their burden to produce more than a scintilla of evidence to raise a fact issue on any of the challenged elements of their claims. *See* TEX. R. CIV. P. 166a(i); *Johnson*, 73 S.W.3d at 207.

The Johnsons assert that Dr. Ram and GPP's summary-judgment motion should be construed as a matter-of-law motion. *See* TEX. R. CIV. P. 166a(c). However, because Ram and GPP asserted in their "No-Evidence Motion for Summary Judgment" that the Johnsons were "[w]ithout evidence of the appropriate standard of care" or "proof that a breach occurred" and their sole expert "offered no liability or causation opinions" as to either defendant, they presented a no-evidence motion. *See* TEX. R. CIV. P. 166a(i). Even if we were to construe Ram and GPP's motion as hybrid, once the Johnsons failed to produce more than a scintilla of evidence under their rule 166a(i) burden, there would be no need to further analyze whether Ram and GPP's proof satisfied their rule 166a(c) burden. *See Ridgway*, 135 S.W.3d at 600.

The Johnsons further assert that the trial court erred in granting summary judgment for a party not named in the suit, specifically, "Michael J. Bishop, M.D., P.A. d/b/a Grand Parkway Pediatrics." They assert that the proper defendant is "Grand Parkway Pediatrics."

In their second amended petition, the Johnsons sue Dr. Ram and "Grand Parkway Pediatrics." And Ram and "Michael J. Bishop, M.D., P.A., d/b/a Grand Parkway Pediatrics" each filed an answer. The Johnsons asked the trial court to make a "fact finding as to the true name or names of [those] doing business as Grand Parkway Pediatrics." In its October 2009 order, the trial court found that the answer filed by "Michael J. Bishop, M.D., P.A., d/b/a Grand Parkway Pediatrics" constituted an answer on behalf of "Grand Parkway Pediatrics."

At a hearing on the Johnsons' motion to vacate the summary judgment and for a new trial, they argued that because there is "no evidence that Michael J. Bishop, M.D., P.A. was doing business as Grand Parkway Pediatrics as an assumed name at the time of the event in January 2007," he was not a proper party.

The record contains Dr. Ram's employment contract with Grand Parkway Pediatrics, which shows her employer as "Michael J. Bishop, M.D., P.A., d/b/a Grand Parkway Pediatrics." The agreement, which states that it became effective on August 20, 2005, is between "Michael J. Bishop, M.D., P.A., a Texas professional association ('Employer[,]' doing business as Grand Parkway Pediatrics)[] and Vyju Ram, M.D. ('Employee')."

The Johnsons argued that because "Michael J. Bishop, M.D., P.A." ceased to exist on June 5, 2009, it could not have filed a motion for summary judgment. However, the Johnsons concede that on June 5, 2009, "Michael J. Bishop, M.D.,

14

P.A.," simply converted to "Michael J. Bishop, M.D., P.L.L.C.," and any liabilities incurred under the former organization would have "continued with the P.L.L.C." The Johnsons explained in the trial court that "the reason" they were "urging this as to who are the true names of Grand Parkway Pediatrics, because it matters as to whether or not it's a healthcare provider." They concede in their reply brief on appeal, however, that their suit constitutes "a health care liability claim."

Finally, the Johnsons assert that although Dr. Ram and GPP moved for summary judgment as to "all claims" against Ram and GPP, and the trial court granted summary judgment in favor of Ram and GPP, ordering that the Johnsons "take nothing," the summary-judgment motion and the trial court's order do not address the Johnsons' claims against Ram for her vicarious liability as to the acts and omissions of her nurses and staff. The Johnsons argue that this case should be remanded "as to the vicarious liability against Dr. Ram."

Generally, granting a summary judgment on a claim not addressed in a summary-judgment motion constitutes reversible error. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). There is a limited exception to this general rule: "'If the defendant has conclusively disproved an ultimate fact or element which is common to all causes of action alleged, or the unaddressed causes of action are derivative of the addressed cause of action, the summary judgment may be affirmed.'" *Id.* (quoting Timothy Patton, SUMMARY JUDGMENTS

15

IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 3.06[3], at 3–20 (3d ed. 2010) (collecting cases)). And this Court has applied the exception as follows:

> Although the exception's application has been expressed in various ways, it can be reduced to two: (1) when the movant has conclusively proved or disproved a matter (usually corresponding to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law or (2) when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim. . . . For the exception to apply, this Court has always required a very tight fit between what was proved or disproved in the motion and what elements the unaddressed claim, as it was alleged, required: otherwise, the exception could swallow the rule.

*Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Further, the harmless error rule requires that a reviewing court, prior to reversing a judgment because of an error of law, find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case [on appeal]." TEX. R. APP. P. 44.1(a). Although a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, the error is harmless if the omitted cause of action is precluded as a matter of law by other grounds raised in the case. *Magee*, 347 S.W.3d at 297–98 (citing *Withrow v. State Farm Lloyds*, 990 S.W.2d 432, 437–38 (Tex. App.—Texarkana 1999, pet. denied) (affirming

16

summary judgment on cause of action not specifically addressed in movant's motion when reversing summary judgment would be meaningless because omitted cause of action was precluded as matter of law)).

Here, the omitted ground, that of Dr. Ram's vicarious liability for the acts and omissions of her nurses and staff, which is intertwined with the negligence grounds presented as to Ram in the summary-judgment motion, is precluded as a matter of law. Ram and GPP's summary-judgment evidence established that the Johnsons' sole expert, Dr. Fernandez, refused to "talk about or give testimony related to any of the nursing care that Jalen received when he was a patient at [GPP]." *See id.*; *Wilson*, 305 S.W.3d at 73. And the Johnsons presented no summary-judgment evidence as to any of the elements of their causes of action against any defendants. We conclude that it would be meaningless to reverse the judgment as to Ram's vicarious liability for the acts and omissions of her nurses and staff because the Johnsons could not recover on this ground as a matter of law. *See Magee*, 347 S.W.3d at 297 (citing *Zarzosa v. Flynn*, 266 S.W.3d 614, 621 (Tex. App.—El Paso 2008, no pet.) (holding reversal would be meaningless because questioned recovery precluded as matter of law)).

We hold that the Johnsons did not meet their burden to bring forward more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements of their health care liability claims. *See Ridgway*, 135 S.W.3d

17

at 601. Accordingly, we further hold that the trial court did not err in granting summary judgment for Ram and GPP.

We overrule the Johnsons' second issue.

**Dismissal**

In their first issue, the Johnsons contend that the trial court erred in dismissing certain of their claims in its October 26, 2009 order "in light of the Texas Supreme Court's recent ruling" in *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013). Although the Johnsons direct our attention to *Potts* and quote language from statutes governing expert reports in regard to health care liability claims, they have not presented a cogent argument to support this issue. Therefore, we hold that review of this issue has been waived. *See* TEX. R. APP. P. 38.1(i).

In any case, to reverse the judgment on appeal, we would have to conclude that any error probably caused the rendition of an improper judgment or prevented the Johnsons from properly presenting their appeal. TEX. R. APP. P. 44.1(a). To make this determination, we review the entire record. *See, e.g.*, *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992). To the extent that the trial court might have erred in dismissing certain claims in its interlocutory order, that error was rendered harmless by the subsequent events. *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005). Here, the Johnsons simply did not satisfy

their burden of production in response to a no-evidence summary-judgment motion that challenged elements that are common to all of their claims.

We overrule the Johnsons' first issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.