

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00246-CV

---

L.T. RUNELS, JR., APPELLANT

V.

TAX LOANS USA, LTD., APPELLEE

---

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2019-534,715, Honorable Edward Lee Self, Presiding

---

December 5, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

L.T. Runels, Jr., appeals (pro se) from the trial court's order granting summary judgment in favor of Tax Loans USA, Ltd., (USA). This is the latest chapter of the saga originally addressed in *Runels v. Tax Loans USA, Ltd.*, No. 07-22-00130-CV, 2023 Tex. App. LEXIS 6577 (Tex. App.—Amarillo Aug. 24, 2023, pet. denied) (*Runels I*). As before, the trial court granted USA's motion for summary judgment awarding it recovery of proceeds from a foreclosure sale of a tax lien acquired from the Lubbock County Appraisal District (LCAD). Again, as before, the crux of the appeal lies in the application of

§ 32.06(a-1) of the Texas Tax Code.  Again, as before, four issues pend for review.  We address those deemed necessary to the disposition of the appeal, and upon doing so, again, as before, reverse the summary judgment.[1]

### *Background*[2]

Runels is one of several heirs to real property located in Lubbock, Texas.  When his father died intestate, the property passed to him and his siblings.  The realty itself was encumbered by a tax lien, which attached upon the failure to pay the requisite taxes for various years preceding 2014.  That resulted in one sibling, Tony, utilizing § 32.06 (a-1) of the Texas Tax Code as a means of satisfying the tax debt.  That is, he obtained a loan from USA to pay the delinquent debt and executed the requisite documents to permit it to acquire the tax lien from LCAD.  The deal was consummated, the debt paid, and the lien assigned to USA.  Tony made several payments to USA on the loan but died before satisfying the obligation.  Thereafter, USA sued to adjudicate the debt owed and foreclose upon its tax lien.

Of all the siblings who may have inherited an interest in the realty, only Runels filed an answer.  Thereafter, both USA and LCAD filed motions for summary judgment and attached supporting evidence.  Runels did not respond to them but instead moved for his own summary judgment.  The trial court granted those of USA and LCAD.  Runels appealed.  We affirmed the judgment awarded to LCAD but found a material fact issue precluding USA's receipt of judgment as a matter of law.  Upon reversing the latter aspect of the final summary judgment, we remanded the cause to the trial court for further

---

[1] USA filed no responsive brief to that of Runels.

[2] This, for the most part, constitutes the "Background" mentioned in our earlier opinion.

proceedings.   Thereafter, USA and Runels again moved for competing summary judgments, with the former ultimately being the victor.

### Issue One—Summary Judgment

Though his first issue, Runels posits a myriad of contentions.  Each is aimed at establishing the impropriety of the trial court's summary judgment.  We address those dispositive of the appeal.

The first foray concerns the legality of the contract.  Runels believes the agreement between USA and his brother Tony was illegal to the extent it purported to give USA the right to acquire from and enforce the tax lien of LCAD.  Unless all who own the realty subject to the lien are party to the agreement, then it is illegal, in his estimation.  This is the very argument we addressed and rejected in our original opinion.  There we construed § 32.06 of the Tax Code "as saying that if more than one person owns the property, fewer than all are free to pursue the § 32.06(a-1) avenue." *Runels*, 2023 Tex. App. LEXIS 6577, at *5.  "And, the taxing unit remains free to transfer any existing tax lien to the creditor who provided the needed funds." *Id.*

Per the doctrine of "law of the case," questions of law, such as those involving statutory interpretation, decided on appeal generally govern the case throughout its subsequent stages. *Davis v. Highland Coryell Ranch, LLC*, 578 S.W.3d 242, 244 (Tex. App.—Amarillo June 18, 2019, pet. denied). So, a court of appeals is ordinarily bound by its initial decision in a subsequent appeal involving the same case. *Id.*  There are exceptions to the doctrine, though, one of which arises when the earlier decision was clearly wrong. *Id.*  Runels seems to implicitly invoke the latter for he argues that other

3

authority contradicts what we held in *Runels I.* In other words, we erred. His contention fails to withstand complete analysis.

The newly cited authority issued years before our disposition in *Runels I.* It consisted of *Mahan v. Lehman*, No. 03-00-00382-CV, 2001 Tex. App. LEXIS 1699 (Tex. App.—Austin 2001, no writ) (mem. op.). *Mahan* too involved effort to enforce a tax lien acquired from an appraisal district. The lien attached to several tracts of land comprising an 88-acre parcel. Ersa-Grae owned one of the several tracts while Mahan owned the others. Furthermore, Ersa-Grae arranged for Lehman to pay the tax debt attributable to the tract it owned. Yet, the appraisal district took an all or nothing approach and demanded payment of the delinquency related to the entire 88 acres. Lehman acquiesced, resulting in the appraisal district conveying to him the tax lien attached to Ersa-Grae's tract. Thereafter, Mahan acquired that very tract from Ersa-Grae. Lehman eventually sued to foreclose upon its tax lien, named Mahan as the defendant, and recovered judgment. On appeal, Mahan argued that the lien was unenforceable "because Ersa-Grae's authorization for Lehman to purchase the lien was insufficient in that Ersa-Grae did not own 100% of the subject property," i.e., the entire 88 acres. *Id.* at *9-10. The *Mahan* panel rejected the argument because: 1) "Mahan and Ersa-Grae owned separate parcels of the property at issue and not undivided interests in such property"; 2) "one can only authorize another person to pay taxes on, and be transferred the tax lien to, property of which the authorizing person is the owner"; 3) "[w]hile Lehman paid the delinquent taxes on the entire eighty-eight acre tract, he received a tax lien **only on Tract 1**" or the Ersa-Grae tract"; 4) "the lien attached only to the thirty acres owned by Ersa-Grae" and 5) "[b]ecause Ersa-Grae owned [tract one] . . . and had the authority to request

4

the taxing authorities transfer a lien as to such property, the tax lien obtained by Lehman is valid under section 32.06." *Id.* at *14 (emphasis added). From this we see that the facts in *Mahan* differ from those here. The lien acquired from the appraisal district did not encompass realty owned by anyone other than Ersa-Grae at the time of acquisition, unlike the situation at bar. So, the actual holding in *Mahan* is inapposite to our case.

Yet, authority and dicta mentioned by the *Mahan* court are of interest. The dicta consists of the statement: "[h]ad the taxing authorities transferred a tax lien *on the entire eighty-eight acre tract*, the lien would, under the *Trimble* decision, be invalid, absent Mahan's consent." *Id.* (emphasis in the original). The authority of interest is the very "*Trimble* decision" to which *Mahan* alluded.

In *Trimble v. Farmer*, 305 S.W.2d 157 (Tex. 1957), we encounter a situation wherein Lucy owned an undivided nine-tenths interest in a parcel of property but only a life estate in the remaining one-tenth. So too did she need to satisfy a tax lien attaching to the entirety of the property. Effort to do so consisted of negotiating with Farmer to pay the tax debt in return for his acquiring the lien via a predecessor to § 32.06. Upon execution of the arrangement, the taxing authority transferred the lien to Farmer. Ultimately, Farmer attempted to enforce the lien against the objections of Effie, who held the 1/10th remainder unowned by Lucy. Effie, in effect, contended that Lucy could not arrange for Farmer to acquire an enforceable lien on the 1/10th interest. The Supreme Court agreed.

The Court first recognized that the predecessor to § 32.06 "sets out a method whereby one paying taxes due against property may receive a transfer of the tax lien against the property." *Id.* at 161. Then, it observed that the statute "specifically requires

5

that for a disinterested third party to acquire the tax lien against any property by the payment of taxes thereon, such third party must deliver to the proper taxing official, authorized to collect the taxes, a request of 'the owner of said property.'" *Id.* From that, it concluded: "Lucy . . . being unable to encumber or convey [Effie's] one-tenth interest in the property, she was not an 'owner' of such one-tenth interest so that she could request the taxing authorities to transfer the tax lien to plaintiff." *Id.* Yet, it continued by holding that Farmer "has no lien on the one-tenth interest." *Id.* Instead, "[h]e has ***a valid and enforcible lien upon the nine-tenths interest in the property owned by Lucy*** . . . ." *Id.* (emphasis added). "It is only this nine-tenths interest which may be sold for the payment of the amount paid." *Id.* Those words and circumstances lead us to conclude that neither the entire tax lien nor ensuing foreclosure upon same were invalidated, but only the proportion equating the percentage of property unowned by the tax debtor. And, that is why, in *Mahan*, the panel indicated Lehman could not have acquired a viable tax lien on the entire 88 acres but only the portion of land actually owned by Ersa-Grae. No less is true here.

Assuming Tony owned only an undivided interest in the realty, he was able to invoke the provisions of § 32.06 of the Tax Code and arrange for USA to satisfy the tax lien encumbering his ownership interest. Per *Trimble*, USA could acquire and enforce the tax lien to the extent of Tony's undivided interest. Moreover, our decision in *Runels I* does not suggest otherwise. There, Runels asserted that the ***entire*** lien was unenforceable or void because all the landowners had not joined in Tony's agreement with USA. And, since the setting there involved the review of a summary judgment, we

6

could only address the grounds mentioned within the motion.[3]  *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296-97 (Tex. 2011).

In short, Runels' complaint about Tony's contract with USA being illegal in its entirety is baseless.  Tony could contract with USA, as he did.  What neither Tony nor USA could do is utilize that contract and assignment as a means of divesting co-owners of the property of their interests if they were strangers to the arrangement.  Furthermore, evidence of record, e.g., an affidavit of heirship, indicates that others owned interests in the realty when Tony contracted with USA.  They included Runels and a brother named Billy.  Thus, material issues of fact remained which prevented the trial court from entering summary judgment 1) ordering that "the total amount due to [USA] under the subject transferred tax lien was $51,955.79, which included, in part, $10,042.70 in attorneys' fees . . ." and 2) adjudicating as valid the sheriff's sale or foreclosure upon the entire tax lien.  These circumstances require us to sustain issue one, in part.

### Issue Three—Summary Judgment Favoring Runels

Runels also contends that the trial court erred in "denying" his "Petition for Excess Proceeds."  Through the latter, he sought recovery of the proceeds from the foreclosure sale which exceeded the tax liability due LCAD.  Yet, Runels did not move for summary judgment seeking recovery of those proceeds.  Thus, we cannot grant him the excess proceeds he now seeks.  Issue three is overruled.

---

[3] Runels having cited *Mahan* and its dicta coupled with our need to liberally interpret pro se briefs, *Kadyebo v. Centennial Ct.,* No. 07-24-00036-CV, 2024 Tex. App. LEXIS 6395, at *1 (Tex. App.—Amarillo Aug. 28, 2024, no pet.) (mem. op.) (noting that pro se briefs are liberally construed), leads us to conclude that the ability of USA to enforce the entire lien and recover all foreclosure proceeds now is before us.

***Issue Four—Unconstitutionality***

In his last issue, Runels seems to question the constitutionality of § 32.06 of the Tax Code. We overrule the issue for it was not raised before the trial court. Thus, he waived the matter. *See In re Commitment of Andrew Pena*, No. 07-21-00170-CV, 2022 Tex. App. LEXIS 4081, at *4-5 (Tex. App.—Amarillo June 15, 2022, pet. denied) (mem. op.) (holding that "[t]he requirement for error preservation applies to both challenges that a statute is unconstitutional on its face or as applied to the appellant").

Having addressed the issues dispositive to the appeal, we reverse the trial court's summary judgment and remand the cause for further proceedings.[4]

Brian Quinn
Chief Justice

---

[4] Though we do not order it, mediation provides a means to effectively resolve claims. This alternative to trial and further delay may be an avenue the parties care to consider.