

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00753-CV

**IN RE THE MACY LYNNE QUINTANILLA TRUST**, the Paige Lee Quintanilla Trust, and the Conner Reed Quintanilla Trust

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2017PC0370
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  October 10, 2018

AFFIRMED

Appellant Andrew Bradford West ("West") appeals from the trial court's judgment in favor of Appellee Paul Perry ("Perry"). We affirm the trial court's judgment.

### Background

In 2014, Oscar Leo Quintanilla ("Quintanilla") established three trusts for the benefit of his children: the Macy Lynne Quintanilla DGT Trust, the Paige Lee Quintanilla DGT Trust, and the Connor Reed Quintanilla DGT Trust (collectively, the "2014 Trusts"). The 2014 trust agreements named Perry Trustee and West Trust Protector. The trust agreements give the Trust Protector the power to remove the trustee and appoint a successor trustee. Each trust agreement contains a clause expressly authorizing and empowering the Trustee to merge the trust into a new trust under certain circumstances.

Quintanilla and West had a falling out in 2016 and severed their business relationship, but West remained Trust Protector for the 2014 Trusts. West requested an accounting of the 2014 Trusts and, on August 18, 2016, advised Quintanilla that he was considering removing Perry as Trustee and replacing him with an institutional trustee as "part of the overall effort to terminate all involvements between Mr. Quintanilla and Mr. West."

Later in August 2016, Quintanilla established three new trusts for his children: the Macy Lynne Quintanilla 2016 Trust, the Paige Lee Quintanilla 2016 Trust, and the Connor Reed Quintanilla 2016 Trust (collectively, the "2016 Trusts"). The 2016 trust agreements are virtually identical to the 2014 trust agreements, except they name Quintanilla's brother Hector Trust Protector in lieu of West. Perry is Trustee for the 2016 Trusts.

Shortly after the 2016 Trusts were formed, Perry executed three agreements to merge each of the 2014 Trusts into the 2016 Trusts. Each of the trust beneficiaries, who had attained majority by the time the trusts were merged, signed the merger agreement for his or her respective trust, expressly acknowledged and agreed to the merger, and waived notice.

Perry subsequently filed this lawsuit, alleging the 2014 Trusts ceased to exist after they were merged into the 2016 Trusts. Perry sought declarations that West is not an "interested person" under the Texas Trust Code and has no right to demand an accounting or to receive financial information regarding either the 2016 Trusts or the merged 2014 Trusts. Perry also requested attorney's fees. West answered and asserted counterclaims seeking declarations that: (1) the 2014 Trusts cannot be merged into the 2016 Trusts; or, alternatively, (2) West is an "interested person" with the right to an accounting and financial information regarding the 2014 Trusts up to the date of merger with the 2016 Trusts; and (3) West fulfilled his duties regarding the 2014 Trusts. West also requested an accounting of the 2014 Trusts and attorney's fees.

Shortly after initiating the case, Perry sought partial summary judgment that: (1) the 2016 Trusts were properly established, and (2) West was not entitled to notice of the merger of the 2014 Trusts into the 2016 Trusts.[1] After a hearing, the trial court granted Perry's motion for partial summary judgment without stating its grounds.

Perry then filed a second motion for summary judgment and for entry of final judgment on the basis that, in light of the trial court's prior order granting partial summary judgment, West cannot prevail on the remaining claims because he is not an "interested person" with respect to the 2014 Trusts or the 2016 Trusts. Perry also submitted the affidavit of his trial counsel in support his request for attorney's fees. The trial court granted the second motion for summary judgment and entered final judgment that West take nothing on his counterclaims against Perry. The trial court awarded Perry $54,757.50 in reasonable and necessary attorney's fees, $554.09 in expenses, and conditional appellate attorney's fees.

In four issues on appeal, West argues the trial court erred in granting the two motions for summary judgment and in rendering a final judgment based on the motions for summary judgment.

## Discussion

### A. Standard of review

We review the grant of traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party seeking traditional summary judgment has the burden to show no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Id.* at 215–16; Tex. R. Civ. P. 166a(c). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Knott*, 128 S.W.3d at 215.

---

[1] The three trust beneficiaries separately moved for partial summary judgment on the same grounds. The record does not reflect whether or how the trial court ruled on the trust beneficiaries' motion.

Where, as here, the trial court does not state its grounds for granting summary judgment, we will affirm the trial court's judgment if any theory presented to the trial court and preserved for appellate review is meritorious. *Id.* at 216.

To resolve Perry's motions for summary judgment, the trial court was required to interpret the trust agreements. When interpreting a trust, courts must ascertain the intent of the grantor from the language used within the four corners of the trust instrument. *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied). If the trust instrument is unambiguous and expresses the grantor's intent, "it speaks for itself." *Id.* (quoting *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied)). "[W]hen the intent of the grantor is unambiguous, his intent controls even if it conflicts with applicable statutes." *Id.* (citing *Vaughn v. Vaughn*, 337 S.W.2d 793, 796 (Tex. 1960)). There does not appear to be any dispute in this case that the trust agreements are unambiguous.

**B.      The trial court did not grant more relief than Perry requested.**

In his first issue, West argues the final judgment granted more relief than Perry requested in his motions for summary judgment. "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding." *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). "Although a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, . . . the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011) (per curiam). We will reverse only those portions of a summary judgment that were based on harmful error. *Id.* at 298.

Specifically, West argues the final judgment purports to resolve all parties and claims even though Perry did not request summary judgment on Perry's own claim that West lacked standing

(*i.e.*, is not an "interested person"), but rather only addressed standing in response to West's counterclaims. West relies on the "Summary Judgment Grounds" section of Perry's second motion for summary judgment, which states: "Because of this Court's May 11, 2017 Order Granting Summary Judgment . . . Mr. West is unable to prevail, as a matter of law, on the Remaining Claims. Namely, that he is an 'interested person' in the [2014] Trusts or the 2016 Trusts." Although the second motion for summary judgment repeatedly refers to "Mr. West's Remaining Claims," the motion does not define "Remaining Claims" as West's counterclaims alone. Rather, the second motion for summary judgment specifically argues: "[T]here is no genuine issue of material fact that Mr. West is not an 'interested person' in the [2014 Trusts] or the [2016 Trusts], as that term is defined under Section 111.004(7) of the Texas Property (Trust) Code." Both Perry and West sought declarations regarding whether West has standing. Therefore, by granting the second motion for summary judgment, the trial court ruled in Perry's favor on this issue and necessarily resolved Perry's claims as well as West's counterclaims.

Because we conclude the final judgment did not grant more relief than Perry's motions for summary judgment requested, we overrule West's first issue.

**C. The trial court did not err in granting Perry's first motion for partial summary judgment.**

In his second issue, West argues the trial court erred in granting Perry's motion for partial summary judgment because Perry did not conclusively establish: (1) the 2016 Trusts were validly formed, (2) the 2014 Trusts were properly merged into the 2016 Trusts, and (3) West was not entitled to notice regarding the trusts' merger.

**1. The 2016 Trusts were validly formed.**

First, West argues the trial court should not have granted Perry's motion for summary judgment because Perry did not conclusively establish that the 2016 Trusts were validly formed.

West contends Perry did not identify any evidence showing the trusts were funded with property at formation, as required by the Trust Code. *See* TEX. PROP. CODE ANN. § 112.005 (West 2014) ("A trust cannot be created unless there is trust property.").

Here, the trust agreement for each of the 2016 Trusts states: "Settlor hereby conveys, transfers and assigns to the Trustee, in trust, the separate property of Settlor described on Schedule A. attached hereto and made a part hereof, receipt of which is hereby acknowledged by the Trustee." Schedule A to each trust agreement states simply: "$5,000.00." West argues this evidence does not prove funds actually were transferred into the 2016 Trusts. However, a trust agreement itself may be sufficient summary judgment evidence that the trust was in fact funded. *See In re Estate of Canales*, 837 S.W.2d 662, 664 (Tex. App.—San Antonio 1992, no writ) (affirming summary judgment that trust was funded even where "Schedule 'A' was left blank" because "abundant property can nevertheless be identified from other provisions of the trust agreement"). Absent any evidence in the record to the contrary, we conclude Perry met his summary judgment burden of demonstrating no genuine issue of material fact exists that the 2016 Trusts were funded.

### 2. The 2014 Trusts were properly merged with the 2016 Trusts.

Second, West argues Perry did not conclusively establish the 2014 Trusts were properly merged into the 2016 Trusts because the record does not show the merger complied with the Trust Code's requirement that a merger cannot impair the beneficiaries' rights or adversely affect achievement of the trusts' purpose. TEX. PROP. CODE ANN. § 112.057(c) ("The trustee may, unless expressly prohibited by the terms of the instrument establishing a trust, combine two or more trusts into a single trust without a judicial proceeding if the result does not impair the rights of any beneficiary or adversely affect achievement of the purposes of one of the separate trusts. . . .").

Here, a provision entitled "Merger" in each of the 2014 trust agreements expressly provides for merger of the 2014 Trusts into newly formed, substantially identical trusts for the benefit of the same beneficiaries:

> Merger: If at any time there are additional trusts created for the benefit of the same person or persons who are beneficiaries of trusts created hereunder on substantially the same terms and conditions as those set forth herein, then the Trustee is expressly authorized and empowered, if in its discretion, it deems such action desirable, to transfer and merge all the assets held in the trust or trusts created hereunder to and with such other trust or trusts and thereupon to terminate the trust or trusts created hereunder as a separate entity or entities.

Therefore, by their own terms, the 2014 trust agreements anticipate and permit the merger of the 2014 Trusts into the 2016 Trusts. Further, each merger agreement states that "Perry, as Trustee of the [2014] Trust and the 2016 Trust, has determined that the combination of the 2016 Trust and the [2014] Trust will not impair the rights of any beneficiary or adversely affect achievement of the purposes of any of the trusts," and each beneficiary signed his or her respective merger agreement acknowledging and agreeing to its terms.

There is scant authority interpreting when a merger of trusts "impair[s] the rights of any beneficiary or adversely affect[s] achievement of the purposes of one of the respective trusts." West argues the merger adversely affected achievement of the purpose of the 2014 Trusts because it removed him as Trust Protector. However, the 2014 trust agreements do not provide a method for removing or replacing the Trust Protector that was circumvented by merging the trusts. Rather, the 2014 trust agreements are silent regarding the removal and replacement of the Trust Protector. The 2014 trust agreements are not silent regarding the method for merging the trusts and expressly authorize and empower the Trustee to do so "in [his] discretion."[2] Therefore, we disagree that a fact question exists regarding whether the merger impaired the rights of any beneficiary or

---

[2] We also note that each trust beneficiary waived notice and agreed to the mergers.

adversely affected the achievement of the purposes of any of the trusts. Absent any evidence in the record to the contrary, we conclude Perry met his summary judgment burden of demonstrating no genuine issue of material fact exists that the 2014 Trusts were properly merged with the 2016 Trusts.

### 3. West was not entitled to notice of the trust mergers.

Finally, West argues Perry was not entitled to summary judgment that West was not entitled to receive notice of the mergers because the mergers adversely affected achievement of the purposes of the trusts by removing the Trust Protector without authorization. As discussed above, we disagree there is a fact question regarding whether the mergers adversely affected achievement of the purposes of the trusts.

In addition, neither the 2014 trust agreements nor the Trust Code itself requires notice be given to a trust protector. Rather, a trustee is only required to give notice to "each beneficiary who might then be entitled to receive distributions from the separate trusts being combined or to each beneficiary who might be entitled to receive distributions from the separate trusts once the trusts are funded." TEX. PROP. CODE ANN. § 112.057(c)(1). Here, each of the three beneficiaries expressly waived notice of the mergers. Therefore, we conclude Perry met his summary judgment burden of demonstrating no genuine issue of material fact exists that West was not entitled to notice of the mergers.

West's second issue is overruled.

### D. The trial court did not err in granting Perry's second motion for summary judgment and disposing of West's counterclaims.

In his third issue, West again argues the trial court erred in granting the second motion for summary judgment because the prior summary judgment did not resolve whether West is an "interested person." As noted above, we conclude that by granting the second motion for summary

judgment, the trial court ruled in Perry's favor that West is not an "interested person" with standing to assert claims against the trusts.

West also argues the trial court erred in granting the second motion for summary judgment because a fact question exists regarding whether West is an "interested person" vis-à-vis the 2014 Trusts. An "interested person" is "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." TEX. PROP. CODE ANN. § 111.004(7) (West 2014). "The phrase 'administration of a trust' refers to when a trustee manages a trust in accordance with its terms and conditions and section 113.051 of the Texas Property Code." *Gonzalez v. DeLeon*, No. 04-14-00751-CV, 2015 WL 5037396, at *4 (Tex. App.—San Antonio Aug. 26, 2015, pet. dism'd) (mem. op.) (citing *Faulkner v. Bost*, 137 S.W.3d 254, 259 (Tex. App.—Tyler 2004, no pet.)). "Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding." § 111.004(7).

We have recognized that "[t]here is very little case law interpreting the meaning of the phrase 'interested person.'" *Gonzalez*, 2015 WL 5037396, at *4. However, generally, a person who does not manage a trust (a trustee) or stand to inherit any trust assets (a beneficiary) is not an "interested person" by virtue of being a "person who is affected by the administration of the trust." *See Lee v. Rogers Agency*, 517 S.W.3d 137, 159–60 (Tex. App.—Texarkana 2016, pet. denied) (holding settlor who did not manage any aspects of the trust and did not stand to inherit any trust assets was not "affected by the administration of the trust"); *Gonzalez*, 2015 WL 5037396, at *5 (holding co-attorneys-in-fact and co-executors for settlors who did not manage trust and did not stand to inherit trust assets were not "interested persons"); *Hunter v. NCNB Tex. Nat'l Bank*, No. 14-94-01199-CV, 1996 WL 223584, at *3 (Tex. App.—Houston [14th Dist.] May 2, 1996, writ denied) (mem. op.) (holding daughter of settlor/beneficiary who had only expectancy to inherit

trust property was not interested person); *Davis v. Davis*, 734 S.W.2d 707, 709 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding father of trust beneficiaries who was not managing conservator and only expected to inherit was not interested person).

Here, although he is neither a trustee nor a beneficiary, West argues he is affected by the administration of the 2014 Trusts because he is the Trust Protector. As West acknowledges, there is little authority discussing the role of trust protectors, which the Trust Code only recognized in 2015. *See* TEX. PROP. CODE ANN. § 114.0031 (West Supp. 2017). The Trust Code provides that a trust protector has only the power and authority granted to him by the trust terms, which may include:

> (1) the power to remove and appoint trustees, advisors, trust committee members, and other protectors;
>
> (2) the power to modify or amend the trust terms to achieve favorable tax status or to facilitate the efficient administration of the trust; and
>
> (3) the power to modify, expand, or restrict the terms of a power of appointment granted to a beneficiary by the trust terms.

*Id.* § 114.0031(d).

The unambiguous language of the trust agreements governs our analysis in this case. *See Ray Ellison Grandchildren Trust*, 261 S.W.3d at 121. The 2014 trust agreements only grant the Trust Protector the power to appoint, remove, and replace the Trustee in accordance with the terms of the agreements. Nothing in the 2014 trust agreements grants the Trust Protector any power to manage any aspects of the trust, to request or obtain an accounting or other financial information, or to inherit any trust assets. The 2014 trust agreements also expressly provide that the Trust Protector is not entitled to any compensation. Therefore, by the express terms of the 2014 trust agreements, the Trust Protector is not "affected by the administration of the trust." For these

reasons, we conclude West is not an "interested person" under section 111.004(7). We overrule West's third issue.

**E.    Attorney's Fees**

In his second motion for summary judgment, Perry sought his reasonable and necessary attorney's fees and expenses. In support, Perry submitted the affidavit of his trial counsel. West filed objections to trial counsel's affidavit and a motion to strike her testimony, but the trial court did not explicitly rule on either. The trial court entered final judgment awarding Perry $55,311.59 in reasonable and necessary attorney's fees and expenses, as well as conditional appellate attorney's fees. In his fourth issue, West argues the trial court erred in awarding Perry attorney's fees because trial counsel's affidavit does not conclusively establish that the fees awarded were reasonable and necessary.

**1.  Standard of review**

The Declaratory Judgments Act permits the trial court to award "costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2014). "[T]he Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). On appeal from an award of attorney's fees, we must determine whether the trial court abused its discretion by ruling arbitrarily, unreasonably, or without regard for guiding legal principles. *Id.*

**2.  Analysis**

While the reasonableness and necessity of attorney's fees ordinarily is a question of fact, "[a]n attorney's affidavit can sufficiently establish the reasonableness of attorney's fees for purposes of summary judgment." *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373

(Tex. App.—San Antonio 1999, pet. denied). "An affidavit filed by the movant's attorney that sets forth [her] qualifications, [her] opinion regarding reasonable attorney's fees, and the basis for [her] opinion will be sufficient to support summary judgment, if uncontroverted." *Id.*

Here, Perry's trial counsel's affidavit sets forth her qualifications as a member in good standing of the State Bar of Texas since 1993, and trial counsel's résumé is attached to her affidavit. Trial counsel's affidavit lists the established factors[3] for determining the reasonableness of attorney's fees and states that trial counsel is familiar with the factors and has considered them in reaching her opinion that:

> [T]he fees and expenses charged in this case are customarily charged in this area for the same or similar services for an attorney with my experience and with the experience of other attorneys reflected on these billings, reputation, and ability, considering the amount in controversy and the type of controversy involved, the time limitations imposed, the results obtained, and the nature and length of our firm's relationship with Mr. Perry.

The affidavit states that "the matters raised in this case required that my firm and I spend approximately 110 hours prosecuting claims against Mr. West and defending against counterclaims made by Mr. West against Mr. Perry." The engagement letter between trial counsel's law firm and Perry, which sets forth the scope of representation and the attorneys' hourly rates, is attached to trial counsel's affidavit, as is a detailed billing record for the matter.

Trial counsel's affidavit states Perry will incur an additional $10,000 in attorney's fees and expenses in connection with the then-pending motion for summary judgment, which is roughly equivalent to the total amount incurred in connection with the first motion for summary judgment, as reflected in the detailed billing record attached to trial counsel's affidavit. In addition, trial counsel's affidavit itemizes anticipated appellate attorney's fees, explaining: "These appellate

---

[3] These factors are set forth in *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) and TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULES, art. X, § 9).

estimates are based on expected hours of attorney and paralegal time to defend the appeal, including preparation of briefs and preparation for and attendance at oral argument."

Although West objected to trial counsel's affidavit and moved to strike her testimony, he did not offer any expert testimony or other evidence controverting trial counsel's testimony. *See Basin Credit Consultants*, 2 S.W.3d at 373 (holding attorney's affidavit is sufficient if uncontroverted). Testimony from an interested witness that "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to case suspicion thereon, it is taken as true, as a matter of law." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.* Therefore, because trial counsel's affidavit is uncontroverted and establishes the reasonableness of the fees sought in line with the applicable factors, we conclude it is sufficient to support summary judgment as to attorney's fees. *See id.*; *Basin Credit Consultants*, 2 S.W.3d at 374. West's fourth issue is overruled.

## Conclusion

Because we overrule all of West's issues on appeal, we affirm the trial court's judgment.

Marialyn Barnard, Justice