

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00335-CV

_____

JAMES PIOT AND MARILEE PIOT, Appellants

V.

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, CHRIS
WHITMIRE, AND MICHAEL PATTERSON, Appellees

_____

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 21-8729-431

_____

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

After a pipe in their house sprung a leak, Appellants James Piot and Marilee Piot filed an insurance claim with their insurer, Appellee Allstate Vehicle and Property Insurance Company. Both sides agree that the insurance policy limited any claim from a leak originating "within or below the slab or foundation of the dwelling" to $5,000. The Piots contended that because the leak originated above the foundation, they were entitled to coverage for the full $611,116 policy limit, but after Allstate determined that the leak originated below the home's foundation, it paid the Piots only $5,000 on their claim.

The Piots sued Allstate for breaches of contract and the duty of good faith and for violations of the Insurance Code and Deceptive Trade Practices Act. They also sued Allstate and two of its insurance adjusters, Appellees Chris Whitmire and Michael Patterson, for promissory estoppel, asserting that Whitmire and Patterson had told them that the claim was covered to the full policy limit, and that based on those representations, the Piots authorized repairs with Regent Restoration, Inc.[1] The Appellees prevailed on a traditional summary judgment, and the Piots now appeal, arguing in three issues that genuine issues of material fact concerning the leak's source

---

[1]Regent intervened in the lawsuit but is not a party to this appeal.

and the adjusters' coverage statements should have precluded summary judgment. We agree and reverse.

## II. Traditional Summary Judgment

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to a summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To prevail on a traditional summary judgment, the movant must produce conclusive evidence establishing its right to summary judgment before the burden shifts to the plaintiff to come forward with competent controverting evidence to raise a fact issue. *See Van v. Peña*, 990 S.W.2d 751, 753–54 (Tex. 1999).

### III. Analysis

#### A. Breach of Contract Claim

The Piots contend in their first issue that the trial court erred by granting summary judgment on their breach of contract claim against Allstate. We agree.

In its motion for summary judgment, Allstate argued that the leak had originated below the foundation, thus precluding the Piots' breach of contract claim. In support, Allstate attached an affidavit from a claims analyst stating that the company had determined the leak's below-foundation origin based on "information gleaned during the claim investigation process" and a report from American Leak Detection (ALD) stating that the leak had originated below the foundation.

We first note that the burdens of proof imposed upon the Piots and Allstate differ depending on the stage at which adjudication is sought. To prevail at trial on the merits on their breach of contract action against Allstate, the Piots would bear the burden to prove that the leak originated above, not below, their home's foundation. But for Allstate to prevail on the breach of contract action by way of its traditional motion for summary judgment, the burden was on Allstate to conclusively disprove that the leak originated above the foundation.[2] To that end, Allstate produced a single

---

[2]Allstate contended at trial, and it contends on appeal, that its summary judgment evidence conclusively negated the Piots' contention that the leak originated above the foundation by conclusively proving the opposite, i.e., that the leak originated below the foundation. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005) (discussing, generally, the concept of legally insufficient evidence on a vital fact issue when the opposite of the vital fact is proven as a matter of law). As

4

piece of summary judgment evidence—the inspection report by ALD stating that the origin of the leak was located below the slab foundation.[3] Assuming, without holding, that this single report rose to the level of conclusive proof sufficient to support a traditional summary judgment motion, the Piots impeached that evidence with testimony from Derrick J. Hahn, one of the Piots' attorneys, who testified that the author of the ALD report admitted to Hahn that he had not inspected the property to determine the source of the leak:

5.      I spoke with Mr. Gonzales with regard to the specific statement in his report that the leak was "[b]elow slab."

6.      I inquired of Mr. Gonzales as to what methodology he employed to make the determination that the leak was below the slab versus above the slab. I learned from my conversation with Mr. Gonzalez that he did not actually perform any inspection to make a specific determination as to whether the leak was below the slab or above the slab. I learned from Mr. Gonzalez that the reference to "[b]elow slab" was merely his opinion.

7.      I inquired of Mr. Gonzales as to whether his report could be corrected to accurately reflect that he did not actually perform an

---

discussed below, however, the "conclusive proof" that Allstate relies upon was not conclusive at all. Its reliability was impeached, thus creating doubt as to a fact issue that must be resolved in the Piots' favor on summary judgment review. *See id.* at 820 (noting that jurors may even disregard testimony from a disinterested witness that has *not* been impeached, and a reviewing court must "assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review").

[3]On appeal, Allstate focuses primarily upon the Piots' lack of summary judgment evidence proving that the leak originated above the foundation, but that puts the cart before the horse. Allstate, not the Piots, bore the initial burden. Allstate was required to bring conclusive proof to negate the Piots' claim that the leak originated above the foundation.

inspection to make a specific determination as to whether the leak was below the slab or above the slab.

> 8.   I learned from Mr. Gonzales that the company policy prohibited him from changing any language in his reports once they are written.

> 9.   I further inquired of Mr. Gonzales as to whether company policy also prevented him from making changes to the report to correct inaccurate statements. I learned from Mr. Gonzales that the company policy did prohibit such changes.

Allstate did not object to Hahn's affidavit, nor did it obtain a ruling excluding it. *See* Tex. R. Evid. 802 (providing that "[i]nadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay").

On appeal, Allstate argues that Hahn's affidavit "presents no evidence that the leak originated above the foundation, which was the one critical fact the Piots had to establish to avoid summary judgment." But Allstate's argument reverses the burden of proof. Because, at the traditional summary judgment stage, Allstate bore the burden to conclusively negate the Piots' contention that the leak originated above the foundation, the Piots did not have to "establish" that the leak *did* originate above the foundation to avoid summary judgment; they only had to raise a fact issue as to Allstate's contention that the leak *did not* originate above the foundation.[4] And

---

[4]Allstate did not file a no-evidence motion for summary judgment, which would have shifted the burden to the Piots to produce more than a scintilla of evidence to prove that the leak's source was above the foundation. *See* Tex. R. Civ. P. 166a(i) (allowing a party, without presenting evidence, to file a no-evidence summary judgment motion, which places the burden of proof on the nonmovant to produce

6

impeachment of the sole piece of evidence that Allstate offered to conclusively disprove the Piots' contention that the leak originated above the foundation was sufficient to defeat Allstate's motion.

Allstate relied exclusively on the report that Gonzales created,[5] and the Piots countered with probative evidence that, if believed, would show that Gonzales's conclusion as to the source of the leak was unfounded. On summary judgment, the trial court was not at liberty to disregard this evidence. *Cf. City of Keller*, 168 S.W.3d at 813 (stating that in a legal sufficiency review, a court "cannot disregard contrary evidence showing the witness was unqualified to give an opinion" or that the expert's opinion evidence was based on unfounded assumptions). Hahn's affidavit cast doubt on the reliability of the report's conclusion that the leak originated below the foundation, and that doubt must be resolved in the Piots' favor. *See Van*, 990 S.W.2d at 753.

Proof is conclusive "only if reasonable people could not differ in their conclusions." *City of Keller*, 168 S.W.3d at 816. Based on the summary judgment evidence here, a reasonable factfinder could have either accepted the ALD report as true or rejected the report as unfounded; thus, a material issue of fact was presented

---

evidence raising a genuine issue of material fact as to the element or elements challenged).

[5]In its brief on appeal, Allstate also points to the estimate prepared by SWAT Plumbing, LLC as evidence that "also indicated the leak originated below the foundation," but the SWAT invoice makes no mention of the source of the leak.

for a factfinder to resolve. Because a fact issue existed as to the single challenged element of the Piots' breach of contract action against Allstate, the trial court erred by granting Allstate's traditional motion for summary judgment on this ground.

We sustain the Piots' first issue.

## B. Extracontractual Claims

In their second issue, the Piots contend that the trial court erred by granting summary judgment on their extracontractual claims against Allstate. We agree.

Allstate's attack on the Piots' extracontractual claims is premised on the assumption that summary judgment was appropriate on the Piots' breach of contract claim. In its summary judgment motion, Allstate argued that the absence of any breach of contract claim foreclosed recovery on the extracontractual claims. But because we have held that the trial court erred by granting summary judgment on the Piots' breach of contract claim, Allstate's argument with regard to the extracontractual claims must fail. We sustain the Piots' second issue.

## C. Promissory Estoppel Claim

In their third issue, the Piots contend that the trial court erred by granting Appellees'[6] summary judgment motion on the Piots' promissory estoppel claim. We agree.

---

[6]Allstate, Whitmire, and Patterson filed a joint motion for summary judgment and did not differentiate as to which Appellees were attacking the Piots' promissory estoppel cause of action.

8

The elements of the Piots' promissory estoppel claim are: (1) Whitmire and Patterson made a promise to the Piots; (2) the Piots reasonably and substantially relied upon the promise to their detriment; and (3) the Piots' reliance was foreseeable. *See Spicer v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 122–23 (Tex. App.—Fort Worth 2020, no pet.) (op. on reh'g). Thus, for Appellees to prevail on their traditional motion for summary judgment on the Piots' promissory estoppel claims, they must conclusively disprove one of these elements. The summary judgment motion does not specifically identify which element it challenges.[7] But based upon the arguments and the evidence on which the motion relies, we assume that Appellees contend that they conclusively disproved the first element, that a promise was made.

In their motion and on appeal, Appellees argue that the Piots had already contracted with Regent before meeting with the adjusters; that the adjusters did not and could not make coverage representations; that Whitmire disclaimed any representation of coverage by providing a written "zero" estimate; that any representations by Patterson were made after Regent had completed the repairs; that the Piots could not recover funds they were not entitled to under the policy; and that no consideration supported any promise allegedly made by either adjuster. In support of the argument, Appellees point to the following chronology of events:

---

[7]A traditional summary judgment motion must state the grounds on which it is made. Tex. R. Civ. P. 166a(c). As a general rule, the granting of a motion that fails to expressly state the grounds constitutes reversible error. *See G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("Summary judgments, however, may only be granted upon grounds expressly asserted in the summary judgment motion.").

9

- Plaintiffs communicated with Regent prior to providing Allstate with notice of the Claim on December 17, 2019;

- Plaintiffs entered into a repair contract with Regent on December 18, 2019;

- Whitmire inspected the Property with Plaintiff and [the Regent representative] present on December 19, 2019;

- Whitmire prepared a "zero" estimate dated December 20, 2019;

- ALD inspected the Property and prepared a report of findings dated December 27, 2019;

- Regent's completed repair invoices are dated December 31, 2019; and

- Patterson inspected the Property and prepared an estimate on January 2, 2020. [Indentation altered.]

According to Appellees, these facts, which they characterize as "undisputed," render the Piots' version of the events "patently inaccurate." Given the chronology that Appellees rely upon, they reason that "neither Whitmire nor Patterson could have authorized recovery of full dwelling policy limits as alleged."

But this analysis misses the mark. For promissory estoppel purposes, the question is not whether they *could* have authorized full dwelling policy coverage up to $600,116.00, but rather whether they *did* represent to the Piots that the water damage would be fully covered up to that amount. In other words, Whitmire and Patterson could have lied, or they could have exceeded their authority, and neither scenario would negate this element of the Piots' promissory estoppel claim.

Appellees argue that Whitmire and Patterson "could not have advised [the Piots] that the loss was 'fully covered under the Policy up to the policy limit of $611,116.00, and they could not have 'approved' repairs and remediation at the Property" because Whitmire did not have the necessary information to make that determination. Furthermore, knowing that the leak had originated below the foundation, Patterson "could not have promised more than an amount sanctioned by the Policy." But this ignores the Piots' summary judgment evidence that Whitmire and Pattterson actually did make these representations.

In James Piot's affidavit, he averred that

- he hired Regent to provide an estimate;

- Whitmire inspected the leak at his home on December 19;

- Whitmire told both James and the Regent repairman that "the loss was fully covered under the Policy up to the policy limit of $611,116.00";

- James told Whitmire that "Regent won't proceed without your approval";

- Whitmire acknowledged that he was aware that Regent would not proceed without his approval and that he agreed at that time "to pay to Regent their quoted amount for making the repairs" and directed the Regent representative to "send its bills/repair invoices directly to Defendant Allstate for payment";

11

- About three weeks later, on January 2, Patterson came to James's home and informed him that "there was coverage for up to $611,000.00 (the policy limit), for repairing the damage, less depreciation and the deductible";

- Patterson told James that "he had reviewed and approved the estimate from Regent"; and

- Had James known that Allstate was limiting coverage to $5,000 he "would not have authorized Regent to make repairs totaling in excess of $20,000, and additional repairs totaling in excess of $80,000."

Notably, James did not contend that Whitmire's and Patterson's statements to him and the Regent representative were true. James simply stated that those representations were made and that he relied upon those representations to his detriment. Without belaboring the summary judgment standard of review as set forth above in our breach of contract analysis, suffice it to say that on this evidence a fact issue exists. At trial a jury would be free to believe either the Piots' version of events (i.e., that Whitmire and Patterson represented to James that Allstate would cover the repairs up to the $611,116 policy limit) or Appellees' version of events that no such representations were made.

Because a fact issue exists as to whether these representations were made, the trial court erred by granting summary judgment on the Piots' promissory estoppel cause of action. We sustain the Piots' third issue.

## IV. Conclusion

Having sustained all three of the Piots' issues on appeal, we reverse and remand. Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: August 11, 2022