**Reversed and Remanded and Memorandum Opinion filed March 8, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00836-CV

---

## IN THE ESTATE OF BENTON SCHULZE, JR.

---

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Cause No. 91-456**

---

## MEMORANDUM OPINION

This appeal arises from a probate dispute. Appellant, Kay Lapaglia Schulze Domel, appeals the trial court's grant of summary judgment in favor of Appellee, Evelyn Perry Leiber Schulze, contending the trial court erroneously granted summary judgment and dismissed Kay's claims with prejudice because (1) Evelyn's summary judgment motion failed to address Kay's fraud claim; and (2) the mediated settlement agreement Kay and Evelyn signed is latently ambiguous regarding what rights, claims, and assets were settled by the parties in this probate dispute. We reverse and remand.

BACKGROUND

Benton Schulze, Jr. died December 7, 1991, leaving his property in a handwritten will to his wife, Evelyn Perry Leiber Schulze, and to his son from a prior marriage, Benton W. Schulze III, "to share and share alike." Evelyn filed an Application for Probate of Will and Issuance of Letters of Administration in December 1991, and the trial court signed an Order Admitting Will to Probate and Authorizing Letters of Administration in January 1992. Evelyn filed an inventory in June 1992, which the trial court approved, listing all of Schulze, Jr.'s property and corresponding value, except for the value of "oil and gas leases and mineral interests" which is listed as "unknown."

In September 2001, Evelyn filed an Account for Final Settlement, in which she listed (1) income received by Schulze, Jr.'s estate from leases, royalties, and interest from 1995 to 2000; (2) debts of Schulze, Jr.'s estate; and (3) real and personal property. Schulze III filed Objections to Account for Final Settlement and Claims against Decedent's Estate in January 2002, complaining that Evelyn, among other things, failed to provide accounting information from 1992 to 1995 as well as identify the sources for various cash receipts and royalty income. Evelyn's Account for Final Settlement was never approved by the court.

Schulze III died on December 9, 2006. His wife Kay, as an interested person in Schulze, Jr.'s estate as the sole devisee of Schulze III, filed an Application to Remove Independent Executrix and to Appoint Successor Independent Executrix in February 2007. Kay requested Evelyn's removal because Evelyn (1) failed to file an Inventory, Appraisement, and List of Claims within 90 days of qualification; (2) failed to "file an accounting as required by law because her Account for Final Settlement was filed without the required vouchers and/or receipts;" and (3) "has not performed her duties and has failed in the

2

performance of her duties as Independent Executrix because she has not made progress in settling or distributing the Estate in over fifteen (15) years."

In April 2007, the trial court ordered Evelyn and Kay to mediation. The mediation resulted in a Rule 11 Memorandum of Mediated Settlement Agreement ("the Agreement"), which Kay and Evelyn signed in May 2007. Among other things, the Agreement stated that (1) it was signed in settlement of "any and all claims belonging to Benton Schulze, III, his heirs, beneficiaries, assigns or anyone claiming under him to assets and distributions of the" Schulze, Jr. estate; and (2) Kay and Evelyn "waive and release any and all claims, judgments, and causes of actions they have or may have against one another or against any personal representative of the other."

The parties filed a Joint Motion to Approve Settlement Agreement in July 2007, stating they have "entered into an agreement settling all issues between them relative to [Schulze, Jr.'s estate] and move the Court to approve the Settlement Agreement and authorize [Evelyn] to execute any and all documents necessary to carry out the terms of the Settlement Agreement on behalf of the Estate of" Schulze, Jr. The trial court signed an order in July 2007, approving the Agreement and ordering Evelyn to execute all deeds, releases, or other necessary documents to carry out the Agreement. In October 2007, Kay filed a Motion to Enforce Rule 11 Memorandum of Mediated Settlement Agreement requesting the trial court order Evelyn to comply with the terms of the Agreement. Kay withdrew her motion in May 2008, stating "[t]here is no need to pursue that motion" any longer.

In June 2015, Evelyn filed a Motion to Convert to Independent Administration. A few weeks later, Kay filed an objection to the motion, stating that Evelyn had provided no accounting for numerous mineral interests set forth in the 1992 inventory and requesting Evelyn account for all mineral interests. In

August 2015, Kay filed a Motion to Demand Accounting, requesting Evelyn file all past due annual accountings by September 1, 2015. In August 2015, the trial court granted Kay's motion and ordered Evelyn to file all past due annual accountings no later than 60 days from the execution of the order. Evelyn filed an Account of Estate in December 2015. The trial court signed an Account of Estate Order in January 2016, approving the Account.

About six months thereafter, Kay filed a Motion to Inspect Supporting Documentation of Account of Estate (1) stating she sent a letter to the trial court requesting that it reject Evelyn's Account of Estate but that the court did not see the letter before signing its order; and (2) requesting to inspect supporting documentation. Three days later, Evelyn filed a response, in which she, among other things, claimed that "[e]xtensive discovery was conducted by attorneys representing Benton Schulze, III and Kay. Any and all claims by either party were settled at the mediation held on May 25, 2007 and the settlement was reduced to a Rule 11 Agreement which was approved by the Court. Pursuant to the terms of the Rule 11 Agreement, Evelyn has made all distributions required of her to Kay. Kay has accepted the benefits of the Rule 11 Agreement and the distributions made to her pursuant thereto."

In July 2016, Kay filed an Amended and/or Supplemental Application to Remove Independent Executrix and to Appoint Successor Independent Executrix, claiming that "sufficient grounds appear to exist to support a belief" that Evelyn has "committed fraud, embezzled or misapplied or is about to commit fraud, embezzle or misapply or at a minimum has been negligent and/or breached her fiduciary duties as Executrix." Several days later, Kay filed a Petition for Declaratory Judgment. In May 2017, Kay filed an amended petition seeking a declaratory judgment that (1) she is "an interested person in the Administration of

4

the Estate of Benton Schulze, Jr."; (2) Evelyn "breached her fiduciary duty as Administratrix of the Estate of Benton Schulze, Jr."; (3) the "Rule 11 Agreement is void because Administratrix failed to obtain the Court's approval prior to negotiating and entering into the Settlement Agreement"; (4) the "Agreement is void on grounds of extrinsic fraud"; (5) the "Agreement covers only the surface property and personal property specifically enumerated therein, and in accordance with the principles of contract law, additional subject matter not contained within the Rule 11 Agreement is not part of the scope of the settlement"; and (6) the Agreement contains a latent ambiguity so parol evidence should be considered to show that Evelyn and Kay did not intend for the "Agreement to include the 106 mineral, oil and gas interests and mineral and/or royalty interests for which a value was never ascertained."

Evelyn filed an answer in May 2017, generally denying Kay's allegation and pleading the affirmative defenses of "accord and satisfaction, estoppel, fraud, laches, payment, release, statute of limitations and waiver." Evelyn also filed a Motion to Dismiss for Lack of Jurisdiction, asserting that (1) the "Rule 11 Agreement was intended to be and on its face was a complete settlement of any and all claims any party had against the other"; (2) Evelyn "has made all distributions required of her to [Kay] pursuant to the terms of the Rule 11 Agreement. [Kay] has accepted the benefits of the Rule 11 Agreement and the distributions made to her pursuant thereto"; and (3) Kay's "alleged causes of action should be dismissed due to lack of jurisdiction because [Kay] has no standing in this matter [and] ceased to be an 'interested person' when she entered into the settlement agreement and accepted the benefits therefrom."

In December 2018, Evelyn filed a summary judgment motion, arguing (1) Kay has "no standing to bring any action in this proceeding because she is no

5

longer an interested party" after she and Evelyn signed the Agreement settling "any and all claims belonging to [Kay] or anyone claiming under Benton Schulze, III"; and (2) it is "clear that all parties had the same knowledge or means of obtaining the same knowledge and there was no fraud, misrepresentation, concealment, or conduct otherwise inequitable on the part of [Evelyn] when the Rule 11 Agreement was executed or at any other time." About two months later, Kay filed her response and asserted that (1) she is an interested person because the Agreement "was not intended to settle any oil, gas and mineral leases, or mineral and/or royalty interests in the Estate of Benton Schulze, Jr."; (2) the Agreement is clear and unambiguous and "was drafted to settle only the personal property and surface property which was specifically identified within the four corners of the Rule 11 Agreement, and that had been valued in the 1992 Inventory"; and (3) alternatively, if there is an ambiguity in the Agreement, "there is a genuine issue of material fact wherein the Court and/or a jury will need to consider all parol[] evidence in a full trial on the merits."

Evelyn filed her reply in July 2020, objecting to Kay's summary judgment evidence and arguing that Kay is no longer an interested party as defined by the Texas Estates Code and has no standing to bring any action against Evelyn because the Agreement unambiguously "states it is 'in settlement of any and all claims belonging to Benton Schulze, III, his heirs, beneficiaries, assigns or anyone claiming under him to assets and distributions of the above described estate and the parties agree as follows.'" The trial court held a hearing on Evelyn's motion for summary judgment in September 2020, at which Kay and Evelyn presented argument.

The trial court signed a Final Summary Judgment on November 17, 2020, stating that Evelyn's summary judgment motion should be granted and finding that

6

Kay has "no standing in this matter and her Application to Remove Independent Executrix and to Appoint Successor Independent Executrix and Petition for Declaratory Judgment are dismissed with prejudice." Kay filed a timely notice of appeal on December 16, 2020.

## ISSUES PRESENTED

Kay presents the following two issues on appeal:

(1) Because Evelyn's motion for summary judgment did not address Kay's fraud claim, and Evelyn's defense of release cannot defeat the fraud claim, the probate court erred in granting summary judgment and dismissing all Kay's claims.

(2) At a minimum, the circumstances leading to the mediated Rule 11 Agreement reveal a latent ambiguity as to what Kay released, so the probate court erred in finding it unambiguously released all her previously undisputed half-interest in Benton Jr.'s estate.

## ANALYSIS

We begin by addressing Kay's first issue, in which she asserts that the trial court erroneously granted summary judgment in favor of Evelyn, determining Kay lacked standing and dismissing Kay's claims when Evelyn's summary judgment motion (1) "only addressed her defense of release" and (2) did not address Kay's claim that Evelyn "fraudulently induced the Rule 11 Agreement and release" of Kay's half-interest in Schulze, Jr.'s estate. Kay contends that Evelyn "committed fraud by failing to disclose material information about the estate's assets prior to entering the Rule 11 Agreement," and when an administrator "misrepresents the value of an estate to obtain a release from one of the beneficiaries, the beneficiary retains standing to seek the administrator's removal and recover damages for fraud."

### *Standard of Review*

We review a trial court's ruling on a motion for summary judgment *de novo*. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018); *Texan Land & Cattle II, Ltd. v. ExxonMobil Pipeline Co.*, 579 S.W.3d 540, 542 (Tex. App.—Houston [14th Dist.] 2019, no pet.). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Tarr*, 556 S.W.3d at 278. Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 506 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see* Tex. R. Civ. P. 166a(c).

"The purpose of a summary judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact.'" *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (quoting *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962)). However, summary judgment may only be granted upon grounds expressly asserted in the summary judgment motion. *Id*. at 297; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Granting a summary judgment on a claim not addressed in the summary judgment motion therefore generally constitutes reversible error. *Magee*, 347 S.W.3d at 297; *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam).

### *Fraud Claim and Standing*

We agree with Kay that the trial court erroneously granted summary judgment in favor of Evelyn and determined Kay lacked standing when Evelyn's summary judgment motion failed to address Kay's claim that Evelyn "fraudulently induced the Rule 11 Agreement and release" of Kay's half-interest in Schulze, Jr.'s

8

estate.

Kay asserted a fraud claim[1] in her Petition for Declaratory Judgment, stating in relevant part:

> This action is brought pursuant to 35.005(3) of the Texas Civil Practice & Remedies Code, which provides:
>
> > "[a] person interested . . . in the administration of . . . the estate of a decedent . . . may have a declaration of legal relations in respect to the . . . estate: (3) to determine any question arising in the administration of the . . . estate[.]"
>
> There is a real and justiciable controversy between the Administrat[r]ix of the Estate of Benton Schulze, Jr. and Applicant.
>
> . . . the actions of Administratrix of the Estate of Benton Schulze, Jr. in concealing the oil, gas and mineral leases, and mineral and/or royalty interests, constitute extrinsic fraud. *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984). Applicant relied upon the disclosures provided by Administratrix, since the values for the oil, gas and mineral leases, and the mineral and/or royalty interests had never been valued since they were listed as "Unknown" on the 1992 Inventory. In discussions to settle the surface and personal property contained within the Estate of Benton Schulze, Jr., Administratrix stated that the mineral leases and interests would be settled at a later date, once their value was known. Applicant relied upon this statement and Administratrix's disclosure that the values of the interests and leases were unknown. At the time the Rule 11 Settlement Agreement was signed, Administratrix breached her fiduciary duty because she had knowledge of the values of the mineral, oil, and gas leases, and the mineral and/or royalty interests and/or when later learned of the same, but she failed to update the inventory and disclose the values of the leases and interests to Applicant.

---

[1] "Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).

9

Thus, Applicant seeks an alternative declaratory judgment that the Rule 11 Agreement is void on grounds of extrinsic fraud. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984).

A release is a contract and, like any other contract, it is subject to avoidance on grounds of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). "In other words, fraudulent inducement is almost always grounds to set aside a contract despite a merger clause, but in certain circumstances, it may be possible for a contract's terms to preclude a claim for fraudulent inducement by a clear and specific disclaimer-of-reliance clause." *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 331; *Schlumberger Tech. Corp.*, 959 S.W.2d at 181. Accordingly, when an estate administrator misrepresents the value of an estate in order to induce a beneficiary to execute a release, the beneficiary has standing to assert a fraud claim as well as seek the administrator's removal. *See McAdams v. McAdams*, No. 07-01-0343-CV, 2002 WL 342639, at *6-7 (Tex. App.—Amarillo Mar. 1, 2002, no pet.).

Kay has standing to assert a claim that she was fraudulently induced to sign the Agreement. *See id*. Here, the trial court seemingly presumed that the Agreement was valid and there was no fraud. Although Kay pleaded a fraud claim, Evelyn never addressed and proved as a matter of law that there was no fraudulent inducement in this case. Instead, Evelyn made one conclusory statement in her motion for summary judgment: "It is abundantly clear that all parties had the same knowledge or means of obtaining the same knowledge and there was no fraud, misrepresentation, concealment, or conduct otherwise inequitable on the part of Schulze when the Rule 11 Agreement was executed or at any other time." Evelyn failed to explain why there was "no fraud, misrepresentation, concealment" and did not point to any supporting evidence.

10

Because Evelyn's summary judgment motion did not address Kay's fraud claim, the trial court reversibly erred by dismissing it. *See Magee*, 347 S.W.3d at 297-98. The trial court also reversibly erred in finding that Kay lacked standing when it presumed the underlying Agreement was valid and not fraudulently induced, despite Evelyn's failure to prove as a matter of law there was no fraud. *See id*. Accordingly, we sustain Kay's first issue; therefore, we need not address her second issue.

## CONCLUSION

Having sustained Kay's first issue, we reverse the trial court's Final Summary Judgment and remand this case to the trial court for further proceedings.


/s/     Meagan Hassan
Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.